478 So.2d 873 (1985)
ARMADORA NAVAL DOMINICANA, S.A., Appellant,
v.
Ramon Elpidio GARCIA, Appellee.
No. 85-1005.
District Court of Appeal of Florida, Third District.
November 20, 1985.
*874 Fowler, White, Burnett, Hurley, Banick & Strickroot and Allan R. Kelley, Miami, for appellant.
Horton, Perse & Ginsberg and Arnold Ginsberg and Charles R. Lipcon, Miami, for appellee.
Before HENDRY, NESBITT and FERGUSON, JJ.
FERGUSON, Judge.
Appellant seeks review of a non-final order denying its motion to dismiss for lack of jurisdiction. Florida Rule of Appellate Procedure 9.130(a)(3)(C)(i) gives us jurisdiction.
*875 Plaintiff, Ramon Elpidio Garcia, filed suit for injuries arising out of two alleged accidents which occurred in May 1981 while he was aboard the vessel "San Francisco" owned by defendant Armadora Naval Dominicana, a Dominican Republic corporation. Plaintiff alleged jurisdiction under the Jones Act, 46 U.S.C. § 688 (1982), the General Maritime Law of the United States and the doctrine of pendent jurisdiction. In an amended complaint his wife joined as a party plaintiff. Defendant moved to dismiss the amended complaint on jurisdictional grounds, and on grounds that the doctrine of forum non conveniens requires that the case be heard outside the United States. The challenge to subject matter jurisdiction is without merit.
The following jurisdictional facts were elicited. Plaintiff is a citizen and resident of the Dominican Republic. His wife, whose claim is derivative, is a resident of the United States.[1] Garcia entered into an oral agreement with the defendant in the Dominican Republic to serve as a seaman aboard the "San Francisco." The vessel is registered in the Dominican Republic and flies the Dominican flag. Its home port is also the Dominican Republic. According to an affidavit of its managing director, the defendant is a Dominican Republic corporation and its base of operations and corporate headquarters is the Dominican Republic. All but one of its shareholders, and all of its officers and managers reside in Santo Domingo. The "San Francisco" was in the port of Houston, Texas on the date of the first accident, and in a Mexican port on the date of the second accident. Plaintiff received medical treatment for his injuries at clinics in Coatzacoalcos Mexico and Santo Domingo, Dominican Republic. All of the crew aboard the "San Francisco" at the time of the accidents were Dominican citizens and residents.
From April 1979 through June 1980, defendant ran a shipping cargo service between Miami and Santo Domingo. Beginning in 1980, all four of defendant's vessels were leased on time charters to Ocean Transport Lines, Inc. of Panama, and later to Atlantic Transport Line, Inc. of Panama. Petroleos Mexicanos (PEMEX), the state owned and operated petroleum company of Mexico, subchartered the four vessels from Ocean Transport and Atlantic Transport. The uncontroverted evidence shows that the only income which defendant received from the operation of the four vessels from 1981 through 1983 came from the time charter hire paid by Ocean Transport. None of that income was generated in or from the United States. From January 1981 through 1983 the four vessels, including the "San Francisco," operated primarily in Mexican coastal trade in the Gulf of Mexico. The only United States port reflected in the sailing schedule from 1981 to 1984 was Houston, Texas.
After June 1980, defendant utilized the services of S. Danoff U.S.A., Limited to act as an intermediary between defendant and charterers in arranging charter-parties. S. Danoff U.S.A., Limited, a Miami-based company, obtained authorization from defendant prior to executing charters on its behalf. The relevant time charter for the "San Francisco," dated June 24, 1980,[2] is signed by Ocean Transport Line, Inc. and S. Danoff U.S.A., Limited, as broker for defendant. The charter agreement states that it was made and concluded in New York[3] and that any disputes shall be arbitrated in New York. It contains the following two references to Miami: "vessel to be placed at the disposal of the charterers and alongside owner's berth Miami, Florida *876 any time day/night," and "hire to continue until the hour of the day of her redelivery in like order and condition, ordinary wear and tear excepted, to the owners (unless lost) at Miami anytime day or night ... unless otherwise mutually agreed." Notwithstanding these provisions, the commercial sailing schedule from 1981 to 1984 did not include Miami.
In Florida the doctrine of forum non conveniens has application only where both parties are nonresidents and the cause of action arose in a jurisdiction outside of Florida. Under such circumstances the trial court has the discretion to determine whether it should retain jurisdiction of the action, or dismiss it without prejudice so as to enable the plaintiff to reinstitute the action in a more appropriate and convenient forum. Houston v. Caldwell, 359 So.2d 858 (Fla. 1978).
The leading United States Supreme Court case on forum non conveniens is Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Gilbert lists nine factors which courts should consider in determining whether the doctrine has application. A dismissal based on this principle is always conditioned upon the defendant's willingness to submit to the jurisdiction of the foreign court and to waive defenses such as the statute of limitations which would deprive the foreign court of jurisdiction. Needham v. Phillips Petroleum Co. of Norway, 719 F.2d 1481, 1483 (10th Cir.1983); Zekic v. Reading & Bates Drilling Co., 680 F.2d 1107, 1108 (5th Cir.1982). Since it is clear that (1) Armadora Naval Dominicana, S.A. has agreed to accept jurisdiction of the Dominican courts and has waived any statute of limitations defenses which may be available in the Dominican Republic for a period of ninety days after the entry of an order of dismissal, and (2) the balance of factors set forth in Gilbert are strongly in favor of the defendant, we reverse the order denying defendant's motion to dismiss.
The nine factors listed in Gilbert for applying the balancing test of conveniences are divided into two categories  private and public interests. The "private interest" factors include: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) cost of obtaining attendance of willing witnesses; (4) possibility of view of premises; (5) the enforceability of a judgment; and (6) all other practical problems that make trial of a case easy, expeditious and inexpensive. In discussing these factors the Court emphasizes that "the plaintiff may not, by choice of an inconvenient forum, `vex,' `harass,' or `oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed. at 1062.
The "public interest" factors, which constitute the second category, relate mainly to judicial efficiency. They include: (1) administrative difficulties resulting from litigation being piled up in congested forums instead of being handled at its origin; (2) local interest in having localized controversies decided at home; and (3) judicial interest in adjudicating the case "in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." Gilbert, 330 U.S. at 509, 67 S.Ct. at 843, 91 L.Ed. at 1063.
After weighing relative advantages and obstacles to a fair trial in the particular forum where suit is first initiated, the court should disturb the plaintiff's choice of forum only when the balance is strongly in favor of the defendant. Gilbert, 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed. at 1062. However, the plaintiff's choice of forum deserves less deference when the plaintiff is foreign. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, 435-36 (1981).
Applying first the "private interest" test, it is not a close question that for the following reasons the interests of both litigants would best be served by having this *877 case adjudicated in the Dominican Republic: (1) the plaintiff, Ramon Elpidio Garcia, is a Dominican citizen and resides there;[4] (2) defendant is a Dominican corporation with shareholders, officers, managers, and its base of operations[5] in the Dominican Republic; (3) Dominican crewmembers, who may have been witnesses to the accidents, and the treating physicians are more easily accessible in the Dominican Republic; (4) compulsory process for attendance of unwilling witnesses is available in the Dominican Republic; (5) the cost of obtaining attendance of willing witnesses would be greatly reduced if this action were pursued in the Dominican Republic since most of the witnesses reside there; (6) the Dominican forum would alleviate the problem of having to translate the testimony of most witnesses from Spanish to English; (7) since the vessel's home port is in Santo Domingo and the vessel is engaged in coastal Mexican trade, a view of the vessel would be more convenient in the Dominican Republic; (8) any judgment would be more easily enforceable in the Dominican Republic where the defendant's headquarters and base of operations are located; and (9) all other practical problems make trial of this case easier, more expeditious, and more inexpensive in a Dominican forum.
We also find that the plaintiff's choice of an American forum is outweighed by the following public interest factors. Since the parties, employee and employer-corporation, are both Dominican, the Dominican Republic has a much greater interest in the controversy than the United States. Even more significant, because in all likelihood Dominican law will apply to this dispute, it is appropriate that the case be heard in the Dominican courts. See Pain v. United Technologies Corp., 637 F.2d 775, 793 n. 101 (D.C. Cir.1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981) (citing Gilbert, 330 U.S. at 509, 67 S.Ct. at 843, 91 L.Ed. at 1063 (where "a strong possibility exists that foreign law will be applied ... the trial court has discretion to weigh into the forum non conveniens determination the consideration that problems will inherently arise when a court is forced to apply a law with which it is unfamiliar")).[6]
Since the inconveniences and burdens of conducting a trial in Florida are clearly *878 greater than any inconveniences and burdens accompanying trial in a Dominican forum, we find that the trial court abused its discretion in denying the motion to dismiss.
We need not address a second issue: whether the trial court committed error in basing its decisions solely on the advice of an outside "expert" without giving notice to the defendant of the person consulted and the substance of the advice, and without affording the defendant a reasonable opportunity to respond.
Reversed.
NOTES
[1] It is not clear whether Mrs. Garcia was a United States resident at the time of the accident. Mr. Garcia stated in deposition that his wife was sending him money from Texas after the accidents.
[2] The time charter provides for hire of the vessel for "about twelve (12) months 30 days more or less."
[3] The managing director of defendant testified by deposition that to the best of his knowledge the charters with Ocean Transport were signed in Miami.
[4] Although Garcia's wife is a resident of the United States, that factor alone is not decisive. See Alcoa Steamship Co. v. M/V Nordic Regent, 654 F.2d 147 (2d Cir.), cert. denied, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980); see also Pain v. United States Technologies Corp., 637 F.2d 775, 798 (D.C. Cir.1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981) (plaintiffs cannot expect a court to defer to their forum choice merely because one of them is an American resident).
[5] Plaintiff contends that the substantial contacts which the vessel had with Florida via the charter party arranged by S. Danoff U.S.A., Limited are sufficient to invoke application of the Jones Act, thereby making Florida an appropriate forum. We reject that argument and find that the existence of a chartering agent in Florida does not change the fact that the corporation's substantial base of operations is in the Dominican Republic. See Volyrakis v. M/V Isabelle, 668 F.2d 863, 868 (5th Cir.1982).
[6] Although we need not decide the conflict of laws issue, see Reyno, 454 U.S. at 251, 102 S.Ct. at 263, 70 L.Ed.2d at 432-33; Pain, 637 F.2d at 793 n. 101; In re Disaster at Riyadh Airport, Saudi Arabia, 540 F. Supp. 1141, 1153 (D.D.C. 1982); but see Szumlicz v. Norwegian America Line, Inc., 698 F.2d 1192, 1195 (11th Cir.1983); Bailey v. Dolphin International Inc., 697 F.2d 1268, 1274 (5th Cir.1983), a preliminary conflicts analysis based on the factors set forth in Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) suggests that American law, i.e., the Jones Act, 46 U.S.C. § 688 (1982), would not govern. Those factors are: (1) the place of the wrongful act; (2) the law of the ship's flag; (3) the allegiance or domicile of the injured seaman; (4) the allegiance of the shipowner; (5) the place of contract; (6) the inaccessibility of the foreign forum; and (7) the law of the forum. An eighth factor, the shipowner's base of operations, was added by the Supreme Court in Hellenic Lines, Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). Most of these factors point to the application of Dominican law. The fact that the injury occurred in United States waters is not itself sufficient to justify application of American law. Volyrakis, 668 F.2d at 867. Even if we were to find American law applicable, that factor is outweighed by all the other public and private interest factors which favor the Dominican forum. See Reyno, 454 U.S. at 260, 102 S.Ct. at 268, 70 L.Ed.2d at 438; Cuevas v. Reading & Bates Corp., 577 F. Supp. 462, 476 (S.D.Tex. 1983).