COPE, Judge
(specially concurring).
I join the opinion and judgment of the court. In my view the dismissal on the ground of forum non conveniens is entirely correct as a matter of Florida law.
I
The trial court granted the motion to dismiss for forum non conveniens in part on federal grounds. The court stated, “Federal, not Florida, principles of forum non conve-niens apply, because the federal rule of forum non conveniens is an inherent part of maritime law. Ikospentakis v. Thalassic S.S. Agency, 915 F.2d 176 (5th Cir.1990).” Final order at 3.
*1313 While this appeal was pending, the United States Supreme Court announced American Dredging Co. v. Miller, — U.S. -, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). The Supreme Court held that the federal doctrine of “forum non conveniens is not part of the uniform law of admiralty.” — U.S. at-, 114 S.Ct. at 990. The federal law of forum non conveniens therefore “is not applicable to the States.” Id. The Court noted that its holding, however, arose in a context in which the parties to the admiralty ease were domestic entities. Id.
The Supreme Court has thus left open the possibility that a different rule might apply where, as here, the parties to the admiralty suit are foreign persons or entities. Given the reasoning contained in American Dredging, however, I am unable to see a basis for such a distinction. In my view, therefore, the federal authority relied on by the trial court does not survive American Dredging. Consequently the trial court order has been partially undercut insofar as the trial court concluded that the federal law of forum non conveniens was controlling in an admiralty case.
II
The trial court order is correct as a matter of state law. The appellee plaintiffs assert that as a matter of Florida law, the application of the forum non conveniens doctrine in this case is barred by Houston v. Caldwell, 359 So.2d 858 (Fla.1978), because there is one defendant Florida resident — an employee of Lloyd’s Register.[1] The plaintiffs’ argument on this point is not well taken.
The decision in Houston v. Caldwell rests on the simple idea that it is convenient — or at least not inconvenient — when a defendant is sued in his or her own home community. Houston v. Caldwell involved a North Carolina auto accident. The North Carolina plaintiff — an individual — sued the Florida defendant — an individual — in his home community in Palm Beach County, Florida. In that context the Florida Supreme Court held that “[i]f venue has been properly established because one of the parties is a resident of this state, then the suit may not be dismissed because another state may be more appropriate.” Id. at 861. The court was, of course, dealing entirely with a controversy arising in the United States, and with parties who were individuals, not business entities.
In later cases it has become necessary to determine what is the residence — -the “home” — of a corporation for purposes of the Houston v. Caldwell rule. This court has concluded that for Houston v. Caldwell purposes, a corporation is “resident” in Florida when it maintains its headquarters or principal place of business here. National Rifle Ass’n v. Linotype Co., 591 So.2d 1021, 1022 (Fla. 3d DCA 1991).[2] The fact that a corporation is “doing business” within Florida is not enough.
“To equate the two [“doing business” with maintaining a headquarters or principal place of business] would force our courts to retain causes of action arising elsewhere, having no connection whatsoever with the state of Florida, and would encourage potential plaintiffs to use the Florida courts to sue any sizeable corporation doing some business in Florida even though the cause of action has nothing to do with the state. Our overburdened courts should have greater discretion in determining whether a cause of action accruing outside of Florida should be maintained here.”
Id. at 1022 (citation omitted).
The appeal now before us requires a further refinement of the National Rifle Association decision. The corporate defendants are the Lloyd’s Register of Shipping and Lloyd’s Register of Shipping Trust Corporation, Ltd. It is common knowledge (and fully established in this record) that the Lloyd’s entities are headquartered in London, England and have their principal places of business there. Lloyd’s Register does, however, have two small offices in Florida. The plain *1314 tiffs have joined as a defendant Christopher Adams, a marine surveyor who was an employee of Lloyd’s Register’s Florida office at the times relevant here.[3] Plaintiffs contend that Lloyd’s is vicariously liable for the acts of Mr. Adams.
The question now before us was nowhere considered in Houston v. Caldwell. If it is correct that the residence of a corporation for Houston v. Caldwell purposes is the headquarters or principal place of business— and I think that the National Rifle Association case is entirely correct on this point— then it follows that the National Rifle Association rule cannot be defeated by the simple expedient of naming a Florida corporate employee as a defendant in the lawsuit. If we allow the procedure employed by the plaintiffs in this case, it would mean that a foreign corporation would, as a practical matter, be “resident” in Florida for Houston v. Caldwell purposes if it only has one employee in Florida. Under the plaintiffs’ argument, suing any individual Florida employee would be sufficient to keep the entire case within Florida, even though the corporate employer has its headquarters and principal place of business elsewhere.
Where a foreign corporation is a named defendant along with a corporate employee, the residence of the corporate employee must be disregarded for purposes of the “bar” of Houston v. Caldwell. Put differently, for Houston v. Caldwell purposes the residence of the corporate employee will be treated as if it were the residence of the corporate employer. Of course, overcoming the bar of Houston v. Caldwell simply means that the trial court can entertain a defendant’s motion to dismiss on grounds of forum non conveniens. It does not mean that the court necessarily will grant the motion, but only that the trial court may consider the forum non conveniens issue on the merits.
When considering a forum non conveniens motion, Florida courts apply the general criteria summarized in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).[4] Those criteria are:
An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [sic] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, “vex,” “harass,” or “oppress” the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed.
Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.
Gulf Oil Corp. v. Gilbert, 330 U.S. at 508-09, 67 S.Ct. at 843 (footnote omitted). Pertinent *1315 here is the observation that the presumption in favor of the plaintiffs choice of forum “applies with less force when the plaintiff or real parties in interest are foreign.... [A] foreign plaintiffs choice deserves less deference.” Piper Aircraft Co. v. Reyno, 454 U.S. 285, 255-56, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, 435-36 (1981).
In the present case the trial court’s application of the forum non conveniens factors was correct. The overwhelming weight of the contacts are in Denmark and Norway. The trial court summarized its findings on this point as follows:
5. Applying the factors set forth in Gulf Oil v. Gilbert, 330 U.S. 501 [67 S.Ct. 839, 91 L.Ed. 1055] (1947), and Piper Aircraft v. Reyno, 454 U.S. 235 [102 S.Ct. 252, 70 L.Ed.2d 419] (1981), this Court finds that dismissal on the grounds of forum non conveniens is appropriate:
a. Virtually all of the relevant witnesses and evidence are located in Scandinavia, most of the relevant documents are in the Scandinavian languages, the casualty occurred in Scandinavia, and plaintiffs are almost all Scandinavian. The private interest factors therefore favor dismissal.
b. The Scandinavian countries have the greatest interest in this litigation involving their citizens and the Scandinavian maritime industry. The public interest factors therefore also favor dismissal in favor of a Scandinavian forum.
c. The courts of Denmark and/or Norway will provide both appropriate and adequate forums.
d.Defendants have agreed with respect to this matter to make available their agents, servants and employees and their documents if this case is heard in Norway and/or Denmark; to waive any statute of limitations defense; to submit to the jurisdiction of the Norwegian or Danish courts; and to satisfy any judgment which may be rendered against them by a Norwegian or a Danish court.
Final order at 3-4. There are no Florida plaintiffs at all. Almost all of the over 200 plaintiffs are Scandinavian.[5] The real defendants in the case are the Lloyd’s entities, based in London.[6] The ease arises out of a fire on a seagoing ferry operating between Denmark and Norway. No Florida interests are at stake.[7] Florida law will not supply the rule of decision. Enormous amounts of evidence would have to be translated. The ease would be extremely burdensome to try, and an imposition on Florida jurors to hear. At a time when the court system is asking the legislature to provide additional resources for the trial courts’ burgeoning workload, the trial courts must have the latitude to apply the forum non conveniens doctrine to transfer away cases which do not have a proper common sense connection with this jurisdiction.
Ill
The trial court’s order also included a state law ground for its forum non conveniens ruling: “The Florida Supreme Court does not require this Court to entertain an action in admiralty where there are virtually no Florida contacts.” Final order at 3. The Florida Supreme Court has not addressed *1316 the question of whether Houston v. Caldwell applies in an admiralty context. This court likewise has not addressed that question, although in one admiralty case there is dictum suggesting that Houston v. Caldwell is applicable in admiralty. See Armadora Naval Dominicana, S.A v. Garcia, 478 So.2d 873, 876 (Fla. 3d DCA 1985).
As already stated, Houston v. Caldwell involved an automobile accident within the continental United States, and a lawsuit between citizens of two states. Houston v. Caldwell did not involve any admiralty matter, nor any cause of action which arose in a foreign country.
Although the American Dredging ease allows states to adopt their own rules regarding forum non conveniens, there are some advantages to having uniform rules of practice in admiralty matters. In my view it would be preferable to follow the doctrine of forum non conveniens in admiralty cases, as the federal courts do.[8] Not only is there . some advantage to having a consistent set of rules for admiralty, but the transient nature of shipping by seagoing vessel is likely to give rise with some frequency to the need to make considered judgments about whether a particular suit has such an attenuated contact with this jurisdiction as to justify dismissal on forum non conveniens grounds. Houston v. Caldwell was decided on the assumption that in a cut-and-dried civil lawsuit between United States citizens, involving a United States cause of action, a simple bright-line rule (which barred application of the doctrine of forum non conveniens) would be logical and workable, and would in fact yield the same result as would case-by-case adjudication. The assumptions underpinning Houston v. Caldwell disintegrate in an international context, and that is particularly so in admiralty.[9]
In my view the trial court’s ruling on forum non conveniens is entirely sustainable under the National Rifle Association case discussed in the previous section. Alternatively, however, it is sustainable as well on the theory that Houston v. Caldwell does not apply in admiralty.
IV
For the reasons stated, I concur in the opinion and judgment of the court.

. This is not an insurance case. Lloyd's Register performs surveys of seagoing vessels. The plaintiff's claim arises out of Lloyd’s marine survey work.

. The Fourth District Court of Appeal acknowledged conflict with National Rifle Association v. Linotype Co. in Continental Insurance Co. v. Kinney System, Inc., 641 So.2d 195 (Fla. 4th DCA 1994).

. Adams was the only individual sued by plaintiffs, even though numerous individuals resident in various jurisdictions worked at various times on the marine surveys in question.

. See Armadora Naval Dominicana, S.A. v. Garcia, 478 So.2d 873, 876 (Fla. 3d DCA 1985) (applying Gulf Oil Corp. v. Gilbert).

. Nine U.S. citizens from other states are plaintiffs.

. It is difficult to see any reason why surveyor Adams was joined as a defendant other than to allow the plaintiffs to attempt to invoke Houston v. Caldwell. See supra note 3. Plainly, the plaintiffs do not expect Mr. Adams to satisfy their $200 million claim in this case, but instead are looking to the deep pocket of the employer, Lloyd's.

. The vessel was formerly owned by a Bahamian company and operated as a cruise ship out of Florida ports. Lloyd’s Register performed statutory surveys for the Bahamian Government and classification surveys for insurance purposes. The vessel was sold to a Danish company, was sailed to Europe, and was converted to a ferry. It was operating under the Danish company's control between Denmark and Norway at the time of the fire which gave rise to this litigation. The owners' insurers have already paid compensation to the passengers. The only Florida nexus is that Florida Lloyd’s personnel were among those who formerly performed survey work on the vessel (at the behest of the Bahamian owner and Bahamian Government) prior to its sale and departure for Europe. There were multiple boards of inquiry following the fire, all of which were centered in Denmark, Norway, and Sweden, and three criminal prosecutions of the Danish owner’s personnel were conducted in Denmark.

. Cf. Tucker v. Resha, 648 So.2d 1187 (Fla.1994) (determining to follow federal interlocutory review procedure for review of trial court orders denying qualified immunity).

. Rulings on forum non conveniens would, of course, be immediately reviewable under Florida Rule of Appellate Procedure 9.130(a)(3)(A).