898 P.2d 709

**Herb MARCHMAN, Marchman Enterprises, Inc., Estate of John Burroughs, and American Nut Company, Inc., Plaintiffs–Appellees, and Cross–Appellants,**

v.

**NCNB TEXAS NATIONAL BANK, Defendant–Appellant, and Cross–Appellee.**

No. 21415.

Supreme Court of New Mexico.

June 5, 1995.

Madison, Harbour, Mroz & Puglisi, P.A., William C. Madison, M. Eliza Stewart, Gregory D. Steinman, Albuquerque, for appellant.

Felker, Ish, Hatcher, Ritchie, Sullivan & Geer, P.A., Carol J. Ritchie, Santa Fe, for appellees.

## OPINION

FRANCHINI, Justice.

The lawsuit underlying this appeal and cross-appeal was filed in the First Judicial District by a Texas corporation; a New Mexico corporation owning all the stock of the Texas corporation; and two shareholders of the New Mexico corporation, one of whom was the president of both corporations. The complaint alleged that a Texas bank had acquired a promissory note executed by the Texas corporation, and, after assuring the corporation that it would work out a mutually agreeable long-term amortization of the debt, the bank wrongfully attached the Texas corporation's accounts receivable in satisfaction of the obligation.

The trial court granted partial summary judgment in favor of the bank against the New Mexico corporation and its shareholders for lack of standing because the claims of these plaintiffs were derivative of the claims of the Texas corporation. After granting judgment against these three plaintiffs, the court dismissed the claims of the only remaining plaintiff—the Texas corporation—for forum non conveniens. The bank moved for attorney's fees and costs, which were denied. The court also sanctioned the plaintiffs for intimidating witnesses from appearing at scheduled depositions. Plaintiffs appeal the partial summary judgment, the dismissal for forum non conveniens, and the award of sanctions. Defendant appeals the denial of attorney's fees and costs.

This case presents the Court with an opportunity to discuss in some detail corporate shareholders' and employees' standing to bring claims in their individual capacity when the corporation has allegedly suffered an injury; the doctrine of forum non conveniens; sanctions under SCRA 1986, 1-037(B) (Repl. Pamp.1992); awards of attorney's fees under the Unfair Practices Act, NMSA 1978, §§ 57-12-1 to -22 (Repl.Pamp.1987 & Cum. Supp.1994); and awards of costs under SCRA 1986, 1-054(E) (Repl.Pamp.1992). In doing so, we vacate the partial summary

judgment in favor of NCNB on its claims of breach of the covenant of good faith and fair dealing and intentional and negligent infliction of emotional distress; we affirm the trial court on all other rulings.

## I. FACTS

The Plaintiff–Appellant–Crossappellees in this case are: American Nut Corporation (ANC), a Texas corporation primarily engaged in the production of peanut butter; Marchman Enterprises, Inc. (MEI), a New Mexico corporation owning 100% of the shares in ANC; Herbert Marchman (Marchman), president of ANC and MEI and principal shareholder in MEI; and the Estate of John Burroughs (Estate), a shareholder in MEI. ANC enjoyed a banking relationship with First RepublicBank Dallas, N.A., until the bank's failure and resulting takeover by the FDIC in 1988. ANC executed a promissory note dated March 31, 1988, payable to First RepublicBank in the amount of $426,-000, which was acquired by the FDIC.

Defendant–Appellee–Crossappellant Nationsbank of Texas, N.A., f/k/a NCNB Texas National Bank (NCNB), is a federally chartered bank with its principal place of business in Dallas, Texas. NCNB became the liquidating bank of First RepublicBank in July 1988. On July 31, 1988, ANC renewed the First RepublicBank promissory note with a maturity date of August 31, 1988, payable to NCNB in the amount of $426,000.

Upon maturity of the note in August 1988, NCNB suspended billing for monthly interest and began negotiations with ANC for restructuring the debt. During the negotiations ANC pursued refinancing options with other lenders, but was unable to find financing from a source other than NCNB. In February 1989 ANC renewed the note payable to NCNB with a maturity date of May 1, 1989. Before approving the renewal of the note, NCNB required that the payments due on the note increase to $10,000 per month, and that Marchman and MEI execute certain documents. In his personal capacity, Marchman executed a confirmation of a guaranty agreement dated March 31, 1988, and a subordination agreement; in his capacity as president of ANC, he executed a confirma-tion, modification, renewal, and extension of a security agreement dated March 31, 1988; and in his capacity as president of MEI, he executed a guaranty agreement and a subordination agreement.

When the note matured in May 1989 it was not declared in default, nor was demand made for principal or interest payments until November 1989. At this point NCNB offered ANC three alternatives: (1) cash collateralization of the remaining debt; (2) six-month renewal of the note with $30,000 monthly principal payments; or (3) legal recourse. ANC elected to execute a renewal note in the amount of $413,040.82 on April 23, 1990, which required five principal payments of $30,000 per month, plus interest, and a final payment of $263,040.82 on October 1, 1990. Marchman, acting in his various capacities, also reaffirmed the security agreement, guarantees, and subordination agreements as a condition for the renewal of the note.

ANC made the first four payments on the note, but failed to make the payment of $30,000 due September 1, 1990, or the final payment due October 1. Marchman had at least one discussion with Eugene Poppe, a loan officer for NCNB, during October 1990. Marchman proposed another workout arrangement for the debt, in which ANC would make principal and interest payments of $15,000 per month, but was told that Poppe was under pressure from his superiors to reach a solution on the note and was unwilling to discuss refinancing until the September 1 installment of $30,000 had been paid. This payment was not made and the parties failed to reach a mutually satisfactory workout of the debt. On November 23, 1990, NCNB sent a certified letter to ANC at its main office in Lewisville, Texas, stating that the note had matured on October 1, 1990, and that the principal balance of the note was $293,040.82 with accrued interest of $10,-908.93. NCNB warned in the letter that if the entire principal and accrued interest were not paid in full by December 11, 1990, the bank would pursue the full legal remedies available to it under the note and documents executed in connection with the note.

Marchman apparently was out of the country when the letter arrived at ANC. On December 19, 1990, Poppe called ANC to inquire about ANC's response to the demand letter. He was told by John Marchman, ANC's vice president, that Marchman had not seen the letter and that ANC would need more time to respond to it. John Marchman called Poppe back later that day, but Poppe was not in at that time and never returned the call.

No further communication took place between the parties before NCNB took unilateral action in satisfaction of the obligation. On December 24 and 26, 1990, and January 30, 1991, NCNB sent letters to ANC's customers demanding that all sums due ANC be paid directly to NCNB, pursuant to NCNB's lien against ANC's accounts receivable granted in the security agreement executed March 31, 1988, and renewed February 15, 1989, and April 23, 1990. ANC's cash flow was adversely affected by this action, and on May 10, 1991, it filed a Chapter 11 bankruptcy petition.

On March 11, 1991, ANC, Marchman, MEI, and the Estate (collectively, "Plaintiffs") filed suit against NCNB in the First Judicial District for the State of New Mexico, located in Santa Fe. The complaint alleged breach of covenant of good faith and fair dealing, negligence, intentional misrepresentation or fraud, prima facie tort, and tortious interference with business relationships. On May 15, 1991, NCNB moved for summary judgment on the claims of Marchman, MEI, and the Estate for lack of standing, and moved to dismiss on the ground that the court lacked personal jurisdiction over it as an out-of-state defendant. On June 18, 1990, Plaintiffs amended their complaint to also allege intentional and negligent infliction of emotional distress and violation of the Unfair Practices Act. In its answer to the amended complaint, NCNB admitted the trial court had personal jurisdiction over the parties. On September 3, 1991, the court ruled that Marchman, MEI, and the Estate had standing to pursue claims for damages suffered separate and distinct from those sustained by ANC.

In March 1992 the case was removed to the United States District Court for the District of New Mexico. It appeared that ANC had no standing to bring a lawsuit in New Mexico because it had not obtained a certificate of authority to do business in the state pursuant to NMSA 1978, § 53–17–20(A) (Repl.Pamp.1983) (requiring foreign corporations to obtain certificate of authority before maintaining legal action). On July 30, 1992, the federal court decided that ANC did have standing based on a certificate of authority acquired subsequent to the filing of its complaint, and remanded the case back to the First Judicial District Court.

NCNB moved for summary judgment on Plaintiffs' claims in March and August 1992, and the trial court granted partial summary judgment on September 18, 1992, on the claims of breach of covenant of good faith and fair dealing and intentional and negligent infliction of emotional distress. On October 19, 1992, NCNB renewed its motion for summary judgment on the claims of Marchman, MEI, and the Estate for lack of standing, and on October 26, 1992, moved to dismiss ANC's claims for lack of subject matter jurisdiction or pursuant to the doctrine of forum non conveniens. Both motions were granted on May 28, 1993. On February 22, 1993, the court sanctioned ANC for intimidation of witnesses and awarded NCNB $10,000 for costs and attorneys' fees incurred in bringing the motion for sanctions.

Plaintiffs appeal the order granting summary judgment in favor of NCNB on the contract and infliction of emotional distress claims, the order granting summary judgment against Marchman, MEI, and the Estate for lack of standing and dismissing the remaining claims on the ground of forum non conveniens, and the order granting sanctions. The court declined to award NCNB costs in the May 28 order, and also declined NCNB's request for attorney's fees. NCNB appeals these rulings on cross-appeal.

## II. STANDING

■ We first address the question whether Marchman, MEI, and the Estate had standing to assert their claims against NCNB. Lawsuits must be prosecuted in the

name of the real party in interest. SCRA 1986, 1–017(A) (Repl.Pamp.1992). Whether one is the real party in interest is "determined by whether one is the owner of the right being enforced and is in a position to discharge the defendant from the liability being asserted in the suit." *L.R. Property Management, Inc. v. Grebe*, 96 N.M. 22, 23, 627 P.2d 864, 865 (1981) (quoting *Jesko v. Stauffer Chem. Co.*, 89 N.M. 786, 790, 558 P.2d 55, 59 (Ct.App.1976)). The real party in interest in this case is ANC, because ANC is the owner of the rights being asserted by Marchman, MEI, and the Estate.

■ MEI holds 100% of the stock of ANC. Marchman is the president of ANC and MEI, and is the principal shareholder in MEI. The Estate is a minority shareholder in MEI. A corporation and a shareholder—even a sole shareholder—are separate entities, and a shareholder of a corporation does not have an individual right of action against a third person for damages that result because of an injury to the corporation. *London v. Bruskas*, 64 N.M. 73, 77–78, 324 P.2d 424, 427 (1958); 12B William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* §§ 5910–11 (Charles R.P. Keating & Jim Perkowitz–Solheim perm. rev. ed. 1993); 1 *id.* § 36, at 35 ("The corporation and it alone may sue ... to recover damages for injuries done to it."). The Third Circuit Court of Appeals stated the principle as follows:

> A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue.

*Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir.1970) (citations omitted), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971).

Thus, "[a]lthough the stockholders of a corporation suffer when the corporation incurs a loss, only the corporation may vindicate its rights. An indirectly injured party should look to the recovery of the directly injured party, not the wrongdoer for relief." *NCNB Nat'l Bank v. Tiller*, 814 F.2d 931, 937 (4th Cir.1987), *overruled on other grounds by Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir.1990). When a corporation is directly injured, shareholders, employees, and creditors of the corporation may suffer indirect injury. *See Stein v. United Artists Corp.*, 691 F.2d 885, 896 (9th Cir.1982). The corporation, having suffered the direct injury, has the right to bring an action against the wrongdoer, while other parties suffering indirect injuries cannot individually assert the corporate cause of action. *See Temp-Way Corp. v. Continental Bank*, 139 B.R. 299, 316–17 (E.D.Pa.) ("It is well established that a stockholder, director, officer or employee of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the individual because of an injury to the corporation."), *aff'd*, 981 F.2d 1248 (3d Cir.1992).

The theory behind this rule is that, once the corporation recovers its losses and replenishes its assets, the recovery will be reflected in the price of the stock and will allow the corporation to distribute the proceeds of the recovery, and thus the shareholders and creditors will also recover for the indirect harm they have suffered. *Stein*, 691 F.2d at 896; *see also* 6 Zolman Cavitch, *Business Organizations* § 119.01[2] (1995) (discussing reasons for rule barring individuals from asserting corporate cause of action). If shareholders were permitted to bring individual actions to recover their indirect losses, there would be a possibility of a double recovery—once by the shareholder and again by the corporation—in the event of a subsequent recovery by or for the corporation. *Stein*, 691 F.2d at 896–87; *Meyerson v. Coopers & Lybrand*, 233 Neb. 758, 448 N.W.2d 129, 134 (1989).

■ There are exceptions to the general rule that a shareholder cannot sue individually for injuries to his or her corporation. Those exceptions arise "where there is a

special duty, such as a contractual duty, between the wrongdoer and the shareholder," and "where the shareholder suffered an injury separate and distinct from that suffered by other shareholders." 12B Fletcher, *supra*, § 5911, at 484; *see also Bank of New Mexico v. Rice*, 78 N.M. 170, 176, 429 P.2d 368, 374 (1967) ("A stockholder may sue as an individual where the act complained of creates not only a cause of action in favor of the corporation but also creates a cause of action in favor of the stockholder as an individual, as where the act is in violation of duties arising from contract or otherwise, and owed to him directly . . . ." (quoting 12B Fletcher, *supra*, § 5921, at 519)). There must be a direct injury to the shareholder in his or her individual capacity, independent of any duty to the corporation, before the shareholder is entitled to sue. *Continental Ill. Nat'l Bank & Trust Co. v. Stanley*, 585 F.Supp. 1385, 1388 (N.D.Ill.1984).

Marchman and MEI contend that they executed guarantees and subordination agreements in reliance on NCNB's representations that it would continue to work with ANC to reach a mutually agreeable long-term amortization of the debt, and that the execution of these agreements support causes of action for breach of implied covenant of good faith and fair dealing, fraud and negligent misrepresentation, negligence, and prima facie tort. The trial court ruled that "no obligations run between the bank and these three Plaintiffs which could give rise to a cause of action in New Mexico." We agree with the trial court.

■ Shareholders acquire standing to maintain actions in their own right when they have suffered an injury separate and distinct from the other shareholders or when they are owed a special duty by the wrongdoer. In this case MEI owns 100% of the shares in ANC, thus it cannot claim an injury separate and distinct from other shareholders, and Marchman and the Estate are shareholders in MEI, thus their causes of action are derivative of MEI's. Marchman and MEI claim that, as a result of their entering into guarantees and subordination agreements with NCNB, they are owed a special duty by NCNB. However, the guarantees and sub-ordination agreements executed by Marchman and MEI were never enforced. NCNB collected upon accounts receivable pursuant to a security agreement executed by ANC and First RepublicBank before NCNB became the holder of ANC's note, and then subsequently affirmed by Marchman in his capacity as president of ANC. Neither Marchman nor MEI suffered direct injury as the result of guaranteeing ANC's obligation and entering into subordination agreements, thus neither Marchman nor MEI have a right to bring an action against NCNB. *See Johnston v. Oregon Bank*, 285 Or. 423, 591 P.2d 746, 748 (1979) (in bank) (holding that bank did not have duty to plaintiff based on guarantee because claimed damages did not flow from guarantee agreement).

■ Plaintiffs complain that NCNB committed the following wrongful acts: NCNB made representations to Marchman that it would continue to work with ANC to reach a mutually agreeable, long-term amortization of the debt, and that it would delay any contemplated action to collect the balance of the note until ANC had been given a reasonable opportunity to respond to its demand; that NCNB failed to disclose its intent to send collateral collection letters to ANC's customers; that NCNB refused to rescind the collection letters; that NCNB refused to negotiate reasonable alternatives with ANC after sending the letters; that NCNB performed these acts in reckless pursuit of its self-interest and with total disregard of the interests of the Plaintiffs; and that NCNB made false or misleading statements in connection with the extension of credit to ANC. Each and every one of these alleged wrongful acts were directed at ANC, not at Marchman, MEI, or the Estate. When the alleged wrongful acts are directed at the corporation and not at the shareholders, the cause of action accrues to the corporation and not to the shareholders in their individual capacity. *Littlefield v. Union State Bank*, 500 N.W.2d 881, 885 (N.D.1993); *see also ITT Diversified Credit Corp. v. Kimmel*, 508 F.Supp. 140, 144-45 (N.D.Ill.1981) (holding that when wrongs were directed at corporation, injuries suffered by president and sole shareholder of corporation were derivative of corporation's

injuries). Therefore, ANC is the proper party to bring the action.

The damages claimed by the Plaintiffs are likewise the result of direct injuries only to ANC and not to Marchman, MEI, or the Estate. Plaintiffs allege that as a result of NCNB's conduct, ANC was forced to lay off its employees and quit its business, that Marchman, MEI, and the Estate lost their investment in ANC, and that Marchman and MEI suffered damage to their business reputations, ability to obtain credit, and livelihood. The injuries alleged are indirect damages suffered by the parties in their capacities as shareholders or employees of ANC and derivative of the harm suffered by the corporation.

■ Plaintiffs also claim that as a result of NCNB's conduct, Marchman and MEI's positions as creditors of ANC have been severely impaired. ANC's creditors have no standing to bring separate actions against NCNB. *See Stein,* 691 F.2d at 896 (holding that creditors had no standing because their losses reflected injury to corporation); *Weiss v. Northwest Acceptance Corp.,* 274 Or. 343, 546 P.2d 1065, 1070 (1976) (holding that when the value of corporate assets is lessened allegedly by a wrongdoer, creditors cannot maintain separate actions against wrongdoer); *cf. Koch Ref. v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1349 (7th Cir.1987) ("[A] single creditor may not maintain an action on his own behalf against a corporation's fiduciaries if that creditor shares in an injury common to all creditors and has personally been injured only in an indirect manner."), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988). The right of recovery for NCNB's wrongful acts, if any, is solely that of ANC; any injuries suffered by Marchman and MEI as creditors of ANC are derivative of injuries suffered directly by ANC.

As the Fifth Circuit Court of Appeals has observed,

> [I]t is universal that where the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone, and not its stockholders (few or many), officers, directors, creditors or licensors, who has a right of recovery, even though in an economic sense real harm may well be sustained as the impact of such wrongful acts bring about reduced earnings, lower salaries, bonuses, injury to general business reputation, or diminution in the value of ownership.

*Martens v. Barrett,* 245 F.2d 844, 846 (5th Cir.1957) (footnotes omitted). Marchman, MEI, and the Estate may have suffered real harm as the result of NCNB's wrongful acts. The right of recovery, however, belongs exclusively to ANC. If ANC recovers damages from NCNB then the other three plaintiffs will in turn recover. Marchman and MEI, in their capacity as creditors, will be repaid along with other creditors out of any award ANC might receive. Once ANC's creditors have been paid, any recovery on behalf of ANC will inure to the benefit of MEI as the sole shareholder of ANC, and in turn to the benefit of Marchman and the Estate as shareholders of MEI. To permit these plaintiffs to bring individual claims based on injuries that are derivative of injuries suffered by ANC might sanction a double recovery. *See, e.g., Stein,* 691 F.2d at 896–97; *Taggart & Taggart Seed, Inc. v. First Tennessee Bank Nat'l Ass'n,* 684 F.Supp. 230, 234 (E.D.Ark.1988), *aff'd,* 881 F.2d 1080 (8th Cir. 1989); *Meyerson,* 448 N.W.2d at 134. The trial court ruled correctly that Marchman, MEI, and the Estate have no individual or personal right of action against NCNB for damages caused by the wrongful acts alleged in the complaint.

## III. FORUM NON CONVENIENS

Plaintiffs also contend that the trial court erred in granting NCNB's motion to dismiss on the alternative grounds of lack of subject matter jurisdiction and pursuant to the doctrine of forum non conveniens. We turn first to the question whether the trial court had subject matter jurisdiction over the dispute.

■ A court has subject matter jurisdiction in an action if the case is within the general class of cases that the court has been empowered, by constitution or statute, to hear and determine. 1 Robert C. Casad, *Jurisdiction in Civil Actions* § 1.01[1] (2d

ed. 1991); *see also Ballew v. Denson,* 63 N.M. 370, 373, 320 P.2d 382, 383 (1958) ("Jurisdiction of the subject matter is the power to hear and determine the issues in a case."). The source of the district court's jurisdiction is Article VI, Section 13, of the New Mexico Constitution, which provides: "The district court shall have original jurisdiction in all matters and causes not excepted in this constitution, and such jurisdiction of special cases and proceedings as may be conferred by law." The district court thus is a court of general jurisdiction, because it has jurisdiction over all matters not expressly consigned to other courts. T.E. Occhialino, *Walden's Civil Procedure in New Mexico* 1–5 (2d ed. 1988). There is a presumption of jurisdiction, in the absence of proof to the contrary, in courts of general jurisdiction. *Heckathorn v. Heckathorn,* 77 N.M. 369, 371, 423 P.2d 410, 412 (1967).

The trial court—and all the district courts of this state—clearly have subject matter jurisdiction over the type of contract, tort, and statutory claims pursued in this action. *See State ex rel. Overton v. State Tax Comm'rs,* 80 N.M. 780, 784, 461 P.2d 913, 917 (1969) (holding that trial court acquires jurisdiction when plaintiff files "pleadings which show the case to be within the general class of which the court has jurisdiction to hear and determine"); *cf. Sundance Mechanical & Util. Corp. v. Atlas,* 109 N.M. 683, 688, 789 P.2d 1250, 1255 (1990) (holding that failure of a complaint to state a cause of action does not divest the court of subject-matter jurisdiction). The trial court ruled that it did not have jurisdiction over the subject matter of the action because of the lack of connection between the dispute and the State of New Mexico. This ruling confuses the concept of subject matter jurisdiction with that of personal jurisdiction.

 The term "jurisdiction" encompasses both jurisdiction over the subject matter and jurisdiction over the parties. *Elwess v. Elwess,* 73 N.M. 400, 404, 389 P.2d 7, 9 (1964). Subject matter jurisdiction is the authority of the court to hear matters within a general class, while personal jurisdiction is the authority of the court to obligate parties to comply with its orders. 1 Casad, *supra,*

§ 1.01[1]–[2]. The exercise of personal jurisdiction over a party implicates due process concerns; thus, a state may exercise personal jurisdiction over a non-resident defendant only if there exist sufficient minimum contacts between the defendant and the forum, and the contacts are such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *F.D.I.C. v. Hiatt,* 117 N.M. 461, 463–64, 872 P.2d 879, 881–82 (1994) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940))). The question whether the parties have sufficient contacts with the state bears on its exercise of personal jurisdiction over the parties, not on its exercise of subject matter jurisdiction. NCNB expressly conceded personal jurisdiction in its answer to the amended complaint and thereby waived its right to challenge the court's assertion of personal jurisdiction. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 2104–05, 72 L.Ed.2d 492 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."); *Sundance Mechanical,* 109 N.M. at 690, 789 P.2d at 1257 (stating that defense of lack of personal jurisdiction is waived if not asserted at outset of action). The trial court therefore has both subject matter and personal jurisdiction in this dispute.

 However, our holding that the trial court had subject matter jurisdiction over the cause of action and personal jurisdiction over NCNB does not end the inquiry. In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the United States Supreme Court, in enunciating the doctrine of forum non conveniens, established the general principle "that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Id.* at 507, 67 S.Ct. at 842. Forum non conveniens may only be applied in cases where "the court in which the action was brought has both subject matter and personal jurisdiction and is a proper venue." 15 Charles A. Wright et al., *Federal Practice*

*and Procedure* § 3828, at 287 (2d ed. 1986). If the case lacks proper jurisdiction or venue, "the action should be dismissed on that ground without reaching the question of forum non conveniens." *Id.; see also* Fleming James, Jr. & Geoffrey C. Hazard, Jr. *Civil Procedure* § 2.31, at 105 (3d ed. 1985) ("The forum non conveniens rule has application only if the court has jurisdiction.").

■■■ The doctrine of forum non conveniens allows a court that has jurisdiction over the parties and subject matter involved to decline to exercise jurisdiction when trial in another forum "will best serve the convenience of the parties and the ends of justice." *Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947). Application of forum non conveniens presupposes the availability of another forum in which all parties are amenable to process. *Gulf Oil*, 330 U.S. at 506–07, 67 S.Ct. at 842. The doctrine furnishes criteria for the trial court to apply in selecting between the plaintiff's and defendant's choice of forums. *Id.* at 507, 67 S.Ct. at 842.

The determination of which forum will best serve the convenience of the parties and the interests of justice requires the court to consider and balance factors concerning the private interests of the litigants and factors concerning the public interests of the citizens and taxpayers of the forum. *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843. The private interest factors to be considered are:

(1) "the relative ease of access to sources of proof";

(2) the "availability of compulsory process for attendance of unwilling" witnesses;

(3) "the cost of obtaining attendance of willing[ ] witnesses";

(4) the "possibility of view of premises, if view would be appropriate to the action"; and

(5) "all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Buckner v. Buckner*, 95 N.M. 337, 339, 622 P.2d 242, 244 (1981) (quoting *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843).

The trial court must also consider factors of public interest in applying the doctrine, including:

(1) administrative difficulties for courts when litigation is filed in "congested centers instead of being handled at its origin";

(2) imposition of jury duty "upon the people of a community which has no relation to the litigation";

(3) the "local interest in having localized controversies decided at home"; and

(4) avoidance of unnecessary problems in conflicts of laws or the application of foreign law.

*Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843.

■■■ In weighing the relevant factors of private and public interest, the court should give deference to the plaintiff's choice of forum. *See Buckner*, 95 N.M. at 339, 622 P.2d at 244 ("*[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.*" (quoting *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843)). Thus, "the moving defendant ... must establish that the public and private interests weigh heavily on the side of trial in the foreign forum." *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1164 (5th Cir.1987) (en banc), *partially vacated on other grounds sub nom. Pan American World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989); *see also Buckner*, 95 N.M. at 339, 622 P.2d at 244 ("[S]ince it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons." (quoting Restatement (Second) of Conflict of Laws § 84 cmt. c (1971))). A foreign plaintiff's choice of forum, however, deserves less deference than a local plaintiff's selection of his or her home forum, because it may not be reasonable to assume that the foreign plaintiff's choice is convenient. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981).

■■■ The burden of persuasion is upon the defendant on all elements of the forum non conveniens analysis. *Reid–Walen v. Hansen*, 933 F.2d 1390, 1393 (8th Cir.1991). The defendant must establish "that (1) there is an adequate alternative forum, and (2) that

considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum." *Mercier v. Sheraton International, Inc.*, 935 F.2d 419, 423–24 (1st Cir.1991) (citation omitted). In order to carry its burden, the defendant "must provide enough information to enable the District Court to balance the parties' interests." *Piper Aircraft*, 454 U.S. at 258, 102 S.Ct. at 267. If the district court finds that the defendant has carried its burden, the remedy for interstate forum non conveniens is dismissal. *See* James & Hazard, *supra*, § 2.31, at 107 ("The courts of one state ... may not transfer cases to courts of another state, and dismissal is the only devise for implementing forum non conveniens on an interstate basis." (footnote omitted)); *Chambers v. Merrell–Dow Pharmaceuticals, Inc.*, 35 Ohio St.3d 123, 519 N.E.2d 370, 374 (1988) ("Once a court has determined that the alternative forum is the more convenient, the common-law doctrine requires the court to dismiss the action.").

■ The trial court has broad discretion in deciding a motion to dismiss based on forum non conveniens. *See Buckner*, 95 N.M. at 338–39, 622 P.2d at 243–44; *Piper Aircraft*, 454 U.S. at 257, 102 S.Ct. at 266 ("The *forum non conveniens* determination is committed to the sound discretion of the trial court."). On appellate review, the trial court "may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft*, 454 U.S. at 257, 102 S.Ct. at 266. In order for the appellate court to effectively determine whether the trial court has properly considered and balanced the relevant factors, the trial court should make findings and conclusions supporting its ruling on the forum non conveniens motion, either "set out in writing or clearly stated in the record." *In re Air Crash Disaster*, 821 F.2d at 1166. The court below did not clearly state the rationale for its ruling on the motion to dismiss, but because it did not have the benefit of this opinion to guide its actions we will—in this case—resolve the forum non conveniens issues ourselves. Ordinarily, however, it will

be considered an abuse of discretion if the court "summarily grants or denies a motion to dismiss on forum non conveniens grounds without oral or written explanation," or if the "court does not supply specific reasons and develop adequate facts to support its decision." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir.1988).

We turn now to an analysis of the district court's ruling granting NCNB's motion to dismiss on the ground of forum non conveniens. ANC argues that a claim of forum non conveniens should be treated like a claim of improper venue, which must be raised in a pretrial motion or in the answer or the defense is deemed waived. *See* SCRA 1986, 1–012(H) (Repl.Pamp.1992); Occhialino, *supra*, at 2–39. Thus, ANC contends, NCNB waived the defense of forum non conveniens by failing to raise it in a timely manner. We disagree.

■ Failure to assert the forum non conveniens issue in a pretrial motion or during the period allowed for defendant to file an answer does not constitute waiver. *Bell v. Louisville & Nashville R.R. Co.*, 106 Ill.2d 135, 88 Ill.Dec. 69, 73–74, 478 N.E.2d 384, 388–89 (1985); *see also Spencer v. Alcoa Steamship Co.*, 221 F.Supp. 343, 344 (E.D.N.Y.) (forum non conveniens need not be raised before answer), *aff'd*, 324 F.2d 957 (2d Cir.1963) (per curiam); *Jenkins v. Smith*, 535 A.2d 1367, 1369 n. 5 (D.C.1987) (observing that forum non conveniens claim was not waived by failure to raise defense at same time as motion to dismiss for lack of jurisdiction). Forum non conveniens claims cannot be waived per se, thus a motion to dismiss for forum non conveniens may be addressed to the court's discretion at any time. *Bell*, 88 Ill.Dec. at 74, 478 N.E.2d at 389; *Snam Progetti S.p.A. v. Lauro Lines*, 387 F.Supp. 322, 323 (S.D.N.Y.1974); *Creamer v. Creamer*, 482 A.2d 346, 353 (D.C.1984).

■ While failure to promptly move to dismiss on grounds of forum non conveniens does not effect a waiver, it is a factor for the court to consider in its exercise of discretion. *In re Air Crash Disaster*, 821 F.2d at 1165; *see also Dietrich v. Texas Nat'l Petroleum Co.*, 193 A.2d 579, 593

(Del.Super Ct.1963) ("[D]elay in urging application of the doctrine will and should be considered in a determination of whether or not it is to be applied."). "Motions to dismiss based on *forum non conveniens* usually should be decided at an early stage in litigation, so that the parties will not waste resources on discovery and trial preparation in a forum that will later decline to exercise its jurisdiction over the case." *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 614 (3d Cir.1991). It is the defendant's responsibility to "assert a motion to dismiss for forum non conveniens within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known or reasonably knowable to the defendant." *In re Air Crash Disaster*, 821 F.2d at 1165. If the defendant unreasonably delays asserting forum non conveniens until the litigation has significantly progressed, the trial court should not be inclined to exercise its discretion in the defendant's favor. 15 Wright et al., *supra*, § 3828, at 291; *Fifth & Walnut, Inc. v. Loew's, Inc.*, 76 F.Supp. 64, 67 (S.D.N.Y.1948); *Creamer*, 482 A.2d at 353.

■ The parties have done considerable discovery and trial preparation in this case. In its request for attorney's fees and costs, NCNB claims to have incurred over $570,000 in litigation expenses. The fact that the parties "already have invested much of the time and resources they will expend before trial" bears heavily against dismissal on grounds of forum non conveniens. *Lony*, 935 F.2d at 614. It is not, however, dispositive. *See Conte v. Flota Mercante Del Estado*, 277 F.2d 664, 667–68 (2d Cir.1960) (stating that in case in which action was between foreigners, witnesses were equally or more available in foreign forum, and foreign law was to be applied, trial court would not abuse discretion by dismissing action for forum non conveniens even though plaintiff had expended time and money and the case was about to go to trial).

Forum non conveniens may be persuasively raised late in an action when circumstances change due to pretrial rulings; only then can the defendant know the facts or circumstances that serve as a basis for the motion. *Cf. Carwell v. Copeland*, 631 S.W.2d

669, 671 (Mo.Ct.App.1982) (affirming dismissal of counterclaim for forum non conveniens after summary judgment on primary claim); *Field Indus., Inc. v. D.J. Williams, Inc.*, 470 A.2d 1266, 1267 (Me.1984) (affirming dismissal of counterclaim for forum non conveniens). For example, in *McLam v. McLam* the plaintiff appealed the dismissal of his action to adjudicate property rights upon divorce, arguing that "plaintiff and the trial court were estopped from raising, considering or applying the doctrine of forum non conveniens because the case had been in court for a considerable time before the doctrine was raised." 85 N.M. 196, 198, 510 P.2d 914, 916 (1973). This Court affirmed the dismissal despite the delay in raising forum non conveniens, because "[t]he question of disposing of defendant's claim as to the property rights of the parties came on for consideration immediately after the child custody question had been resolved." *Id.* It was only after the child custody issue was disposed of that the circumstances serving as a basis for the motion became apparent.

In the instant case, the viability of the forum non conveniens claim became apparent when the only plaintiffs with any real connection to New Mexico—Marchman, MEI, and the Estate—were dismissed from the action. The ruling granting summary judgment against Marchman, MEI, and the Estate and the ruling granting the motion to dismiss on the basis of forum non conveniens were made at the same time and are contained in the same order. It is clear that NCNB asserted its motion to dismiss within a reasonable time after the facts that served as a basis for the motion had developed and become known. Under these circumstances it was not a clear abuse of discretion for the court to grant a motion to dismiss for forum non conveniens this late in the proceedings.

■ We now examine the assertions of the parties in light of the *Gulf Oil* private interest factors. ANC stands alone as a plaintiff now that the other plaintiffs have been found to lack standing. The remaining dispute is between a Texas bank and a Texas corporation and is based on events that took place in Texas. The forum non conveniens motion was made in connection with the mo-

tion for reconsideration of the standing issue, and was brought promptly once the circumstances forming the basis of the claim were known. The parties list thirty-eight witnesses with Texas addresses, including many important witnesses to the transactions. Eleven potential witnesses reside in New Mexico. The access to sources of proof is somewhat better in Texas, and the cost of obtaining attendance of willing witnesses would probably be less. Neither party claims that there would be a necessity for compulsory process for unwilling witnesses, or that a view of any premises would be required, so those factors weigh in favor of maintaining plaintiff's choice of forum. Practical problems include the fact that the parties have already expended a great amount of resources. The case has already been refiled in Texas, however, and Plaintiffs admit that they intend to use the depositions and exhibits already prepared to the extent possible in the Texas litigation, in order to avoid duplicative discovery costs. Finally, we must give some deference to a foreign plaintiff's choice of forum in weighing these factors. We conclude that the private interest factors are evenly balanced and do not weigh strongly in favor of either Texas or New Mexico as the more convenient forum.

When the private interest factors do not strongly indicate the more convenient forum, the public interest factors can be controlling. We agree with the Fifth Circuit Court of Appeals that

> even when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant forum non conveniens dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute or that foreign law will predominate if jurisdiction is retained.

*In re Air Crash Disaster*, 821 F.2d at 1165–66 (quoting *Pain v. United Technologies Corp.*, 637 F.2d 775, 792 (D.C.Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981)); *accord Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir.), *cert. denied*, 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983). The public interest fac-

tors militate in favor of Texas as the forum for this dispute. No facts concerning the caseload of the First Judicial District have been presented to the Court, so we cannot say that this court is a particularly "congested center." It is indisputable, however, that it is burdensome for a court to hear a case in which the forum has no connection to the litigation. *See, e.g., Lynch v. Pack*, 68 Wash. App. 626, 846 P.2d 542, 545 (1993). The fact that Santa Fe County has no relation to the litigation makes it unfair to impose either jury duty upon the members of the community or the cost of trial upon its taxpayers. The local interest in having localized controversies decided at home makes resolution of the dispute in Texas appropriate. We also note that the agreement between ANC and NCNB stipulates that any dispute under the agreement is to be decided under Texas law. The need to apply the law of a foreign jurisdiction is a significant factor favoring dismissal on the basis of forum non conveniens. *See, e.g., Dowling v. Richardson–Merrell, Inc.*, 727 F.2d 608, 615 (6th Cir.1984); *Pain*, 637 F.2d at 793 n. 101; *Qualley v. Chrysler Credit Corp.*, 191 Neb. 787, 217 N.W.2d 914, 915–16 (1974).

This is a dispute between a Texas plaintiff and a Texas defendant over alleged tortious acts that occurred in Texas, and over a contract executed and performed in Texas and interpreted under Texas law. The State of Texas has the overwhelmingly greater interest in this matter and its courts are better prepared to handle the interpretation and application of Texas law. We hold that the balance of all relevant factors weighs heavily in favor of dismissal, and therefore find no abuse of discretion by the trial court in dismissing for forum non conveniens. *See McLam*, 85 N.M. at 197, 510 P.2d at 915 (affirming forum non conveniens dismissal; property to be adjudicated was located in Idaho, plaintiff was Idaho resident, Idaho law was to be applied); *Armadora Naval Dominicana, S.A. v. Garcia*, 478 So.2d 873, 877–78 (Fla.Dist.Ct.App.1985) (holding that denial of motion to dismiss for forum non conveniens was abuse of discretion; plaintiff was foreign citizen, defendant was foreign corporation, event occurred in foreign country, foreign law was to be applied); *Hormel Int'l Corp. v.*

*Arthur Andersen & Co.*, 55 A.D.2d 905, 390 N.Y.S.2d 457, 458–59 (1977) (holding that denial of motion to dismiss for forum non conveniens was abuse of discretion; plaintiff and defendant were foreign corporations, transaction that was basis of dispute took place in foreign jurisdiction, witnesses were located in foreign jurisdiction, foreign law was to be applied); *Plum v. Tampax, Inc.*, 402 Pa. 616, 168 A.2d 315, 316–17 (affirming forum non conveniens dismissal; plaintiff was foreign resident, defendant was foreign corporation, action based on contract performed in another state, foreign law was to be applied), *cert. denied*, 368 U.S. 826, 82 S.Ct. 46, 7 L.Ed.2d 30 (1961).

The doctrine of forum non conveniens cannot be applied, however, unless an adequate alternative forum is available to the litigants. *In re Air Crash Disaster*, 821 F.2d at 1165. Plaintiffs raise the question whether the statute of limitations bars the filing of some or all of its causes of action in Texas. If so, Texas would not be an adequate forum because ANC would be deprived of its remedies. *See Piper Aircraft*, 454 U.S. at 255, 102 S.Ct. at 265–66. Professor Casad notes in his treatise on jurisdiction that courts commonly take action to ensure that an alternative forum is actually available to the parties: "To protect the plaintiff against the running of the statute of limitations and against having to counter jurisdictional objections in the new court, the order of dismissal usually is conditioned upon the defendant's waiving those defenses." 1 Casad, *supra*, § 1.04, at 1–28; *see also* James & Hazard, *supra*, § 2.31, at 105 ("If the court dismisses for forum non conveniens, it may condition the dismissal on the defendant's agreeing to submit to jurisdiction in the more convenient forum, to waive a statute of limitations defense when the new action is brought, and similar equitable considerations."); *Mizokami Bros. of Ariz., Inc. v. Mobay Chem. Corp.*, 660 F.2d 712, 719 (8th Cir.1981) (setting conditions for conditional dismissal); *Mills v. Aetna Fire Underwriters Ins. Co.*, 511 A.2d 8, 12–16 (D.C.1986) (discussing use of conditional dismissal to ensure availability of alternative forum). In order to protect ANC's claims, the dismissal for forum non conveniens is conditioned on NCNB's waiver of any statute of limitations defense that has arisen since this case was commenced on March 11, 1991. If NCNB refuses to abide by this condition, ANC may reinstate its action in the First Judicial District.

## IV. RULE 37

Plaintiffs' next issue on appeal is whether the trial court erred in awarding NCNB partial reimbursement for costs and attorney's fees incurred in pursuing a motion to dismiss or for sanctions. The events precipitating the motion involve NCNB's efforts to obtain discovery on ANC's alleged damages. Plaintiffs contended that ANC had devised a method to process raw Costa Rican and Nicaraguan peanuts into a paste, which would then be imported into the United States. By transforming the peanuts into a paste, ANC could allegedly avoid import restrictions on raw peanuts and thereby reap a windfall profit from manufacturing peanut butter from inexpensive Central American peanuts. Plaintiffs claimed that the destruction of ANC prevented it from completing its plan, causing it to suffer $30,000,000 in damages.

NCNB desired to depose two Costa Rica residents, William Guido–Madriz (Guido) and Roberto Gutierrez–Palacios (Gutierrez), who allegedly had intimate knowledge of the feasibility, or lack thereof, of ANC's plan to import peanut paste. Plaintiffs filed a motion for a protective order under SCRA 1986, 1–026(C) (Cum.Supp.1994), objecting to the taking of Guido's deposition, which the court denied, ordering from the bench that NCNB would be permitted to take the deposition. The witnesses voluntarily agreed to come to the United States to give depositions to preserve trial testimony, and their depositions were scheduled to be given in Dallas, Texas, on September 24 and 25, 1992. The witnesses changed their minds, however, and decided not to appear in the United States for the depositions after receiving a series of threatening phone calls from the United States and personal visits and calls from a Costa Rican attorney, Luis Pal Hegedus, employed by Plaintiffs' counsel.

NCNB's attorneys went to Costa Rica and obtained statements from Guido and Gutier-

rez, and, based on information in the statements that the witnesses had been intimidated from testifying, filed a motion to dismiss with prejudice or for other sanctions. The issue was briefed by the parties and the court heard argument on the question. Following oral argument, the court ruled from the bench that Plaintiffs and counsel had acted ethically, but their agents in the United States and in Costa Rica had turned what were essentially innocent inquiries into intimidation and threats. The court found that Hegedus, by making statements such as "if you are thinking this is going to be a pleasure trip, you are wrong," "we are going to file a motion to take your deposition before a federal judge," "if your deposition is not supported by some form of document or is untrue, you can be arrested and detained for false testimony," and "the procedure is different in the United States than in Costa Rica, if the individual cannot prove that his deposition is absolutely true and correct, then he is practically detained on the spot," had in fact intimidated the witnesses. The court denied NCNB's motion to dismiss, but ordered Plaintiffs to pay all costs and attorney's fees incurred by NCNB in resolving the motion, the award not to exceed $10,000. NCNB subsequently claimed it had incurred over $25,000 in attorney's fees and expenses for the motion.

The court did not indicate the legal basis of its award of sanctions, though NCNB contended in its motion to dismiss or for sanctions that the court had authority to do either under SCRA 1986, 1–037 (Repl.Pamp. 1992) (Rule 37), or under its inherent power to impose sanctions for failure to obey discovery rules, *see State ex rel. N.M. State Highway and Transp. Dep't v. Baca,* 120 N.M. 1, 4, 896 P.2d 1148, 1151 (1995); *Shamalon Bird Farm, Ltd. v. United States Fidelity & Guar. Co.,* 111 N.M. 713, 716, 809 P.2d 627, 630 (1991). We hold that the court properly invoked its authority to award sanctions under Rule 37. Therefore, we do not decide whether the facts support an award of sanctions pursuant to the court's inherent power.

■■■ The decision to award sanctions under Rule 37 is within the sound discretion of the trial court, and on appeal we review the court's decision for abuse of discretion. *Medina v. Foundation Reserve Ins. Co.,* 117 N.M. 163, 166, 870 P.2d 125, 128 (1994). Rule 37(B)(2) provides in pertinent part:

If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others are the following:

. . . . .

(c) an order striking the pleadings or parts thereof ... or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

. . . . .

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

■■■ A court order issued under Rule 37(A) is not a prerequisite to imposition of Rule 37(B) sanctions; any clearly articulated order requiring or permitting discovery can provide the basis of sanctions for noncompliance. *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1363 (2d Cir.1991). "Thus when the discovery procedure itself ... permits an order, as on denial of a motion for a protective order under Rule 26(c), failure to obey the order can be punished immediately by any of the sanctions listed in Rule 37(b)." 8A Charles A. Wright et al., *Federal Practice and Procedure* § 2282, at 600 (2d ed. 1994); *see also* 8A *id.* § 2289, at 668 (Rule 37(b) sanctions are available for violation of any order to provide or permit discovery "regardless of what rule they were made under"). Moreover, the order to provide or permit discovery need not be written, but can be made orally from the bench. 8A *id.* § 2289, at 670. "[A]n oral directive from the district court provides a sufficient basis for Rule 37(b)(2) sanctions if it unequivocally directs the party to provide the requested discov-

ery." *Halas v. Consumer Servs., Inc.*, 16 F.3d 161, 164 (7th Cir.1994). In this case, the court's denial of Plaintiffs' Rule 26(C) motion and oral directive that the depositions would be permitted provide a sufficient basis for the award of sanctions.

Plaintiffs argue that the court abused its discretion in awarding sanctions, because the court did not find that they, their counsel, or Hegedus acted willfully or in bad faith in intimidating the witnesses. It is true that the court must find that the disobedient party acted willfully or in bad faith in failing to comply with a discovery order before imposing the severe sanction of dismissal. *Medina*, 117 N.M. at 166, 870 P.2d at 128; *United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 241, 629 P.2d 231, 317 (1980), *appeal dismissed and cert. denied*, 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981). Lesser sanctions, however, may be applied "to *any* failure to comply with discovery orders." *United Nuclear Corp.*, 96 N.M. at 202, 629 P.2d at 278; *see also BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir.1994) ("A court may impose lesser sanctions without a showing of willfulness or bad faith on the part of the disobedient party."). The simple fact that the party failed to comply with the order is enough to support sanctions, "notwithstanding a complete lack of culpability on [the sanctioned party's] part." *Halas*, 16 F.3d at 165. "[T]he culpability of a party who fails to comply with a court order determines only which sanctions the court should impose and not whether any sanctions are appropriate at all." *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 473 (7th Cir.1984); *see also* Fed.R.Civ.P. 37 advisory committee's note (1970 amend.) (willfulness "relevant only to selection of sanctions, if any, to be imposed"; negligent failure to comply with discovery order may support imposition of expenses and fees). The court did not rule on the question whether the witnesses were willfully intimidated, stating only that whether Hegedus intended to intimidate the witnesses presented an "interesting question." The trial court did find, however, that Hegedus had intimidated the witnesses and caused them to fail to appear at their scheduled depositions, in violation of the court's order that the depositions were to be allowed. This finding is sufficient to support an award of expenses and fees incurred in pursuing the motion for sanctions.

Rule 37(B)(2) provides that if a party fails to permit discovery "the court *shall* require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure." (Emphasis added). The court thus must award reasonable expenses to the affected party when the other party has failed to comply with a discovery order. The only exceptions to a mandatory award of expenses for failure to comply with a discovery order occur when the failure to comply was "substantially justified" or if "other circumstances make an award of expenses unjust." *Id.; see also* Fed.R.Civ.P. 37 advisory committee's note (1970 amend.) (Rule 37 "places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust"). An individual's discovery conduct may be considered "substantially justified" under Rule 37 if it is a response to a " 'genuine dispute,' or 'if reasonable people could differ as to [the appropriateness of the contested action].' " *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (alteration in original) (citations omitted) (quoting *Reygo Pacific Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir.1982)). Plaintiffs do not argue that the failure to comply was justified, but instead contend that the conversations related by the witnesses did not take place. The record supports the trial court's finding that Hegedus did make intimidating statements to the witnesses. The failure to comply thus was not substantially justified.

Plaintiffs contend that the sanctions are unjust because the court found that they and their attorneys had acted ethically and that the intimidation was caused by the "renegade acts" of their attorney's agent. Applying principles of agency law, we conclude that it is not unjust to sanction Plaintiffs for Hegedus's acts.

Plaintiffs' attorney is an agent of the Plaintiffs. *See Comstock v. Mitchell,* 110 N.M. 131, 132, 793 P.2d 261, 262 (1990) (discussing client/attorney relationship as that of principal/agent). "The clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds." *United States v. 7108 West Grand Ave.,* 15 F.3d 632, 634 (7th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 2691, 129 L.Ed.2d 822 (1994). Plaintiffs' attorney hired a Costa Rican attorney, Hegedus, to speak to the witnesses, ostensibly to ascertain what knowledge or information the witnesses had and what testimony they could be expected to give. An "agent" is "a person authorized by another to act on his account and under his control." Restatement (Second) of Agency § 1 cmt. e. (1958). Hegedus thus is an agent of Plaintiffs' attorney, and a subagent of the Plaintiffs. *See id.* § 5(1) (defining "subagent" as "a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible."). Subagents, such as Hegedus, are agents both of their immediate employer, in this case Plaintiffs' attorney, and of their employer's principal, in this case the Plaintiffs. *See* Warren A. Seavey, *Handbook on the Law of Agency* § 7(C), at 10 (1964); Warren A. Seavey, *Subagents and Subservants,* 68 Harv.L.Rev. 658, 660 (1955) (stating that when the purpose of the agency relationship is for the subagent to carry out the purposes of first principal, the subagent "is the agent of two principals, one of whom is subordinate to the other"). A principal thus is liable for the wrongful acts of his subagent committed within the scope of the agency relationship. Restatement (Second) of Agency § 255 cmt. a, illus. 1; *id.* § 362 cmt. b, illus. 1; *see also Blanchette v. Cataldo,* 734 F.2d 869, 875 (1st Cir.1984) ("A principal's liability for the acts of its agents' employees—its subagents—is normally the same as its liability for the acts of the agents themselves."). The fact that the witnesses were intimidated by a subagent of the Plaintiffs is not a "special circumstance which would make an award unjust." *See Hawkins v. Fulton County,* 96 F.R.D. 416, 421 (N.D.Ga.1982) (holding that it was not unjust to hold attorney of record liable under Rule 37(b) for agent's failure to comply with discovery order). Because we find no evidence that the interference with discovery was substantially justified or that an award of expenses and fees would be unjust, we hold that the trial court did not abuse its discretion by ordering Plaintiffs to pay NCNB's expenses and fees incurred in prosecuting the motion to dismiss and for sanctions.

■ Plaintiffs also argue that the court erred in awarding sanctions because the sanctions were punitive and the court did not find that Plaintiffs or their attorneys had authorized, participated in, or ratified the agent's acts. *See Albuquerque Concrete Coring Co. v. Pan Am World Servs., Inc.,* 118 N.M. 140, 143, 879 P.2d 772, 775 (1994) (stating that principal or master is liable for punitive damages only if he has in some way authorized, participated in, or ratified wrongful conduct of agent or servant). We disagree with Plaintiffs' assertion that the sanctions awarded by the court were punitive in nature. The sanctions were intended to compensate NCNB for its expenses and fees incurred in investigation of the circumstances surrounding the witnesses' failure to appear at the scheduled deposition and in pursuing a motion to dismiss or for sanctions based on the results of its investigation. *See State ex rel. N.M. State Highway and Transp. Dep't,* 120 N.M. at 7, 896 P.2d at 1154 (permitting attorney's fees awards against the State, despite language in Tort Claims Act precluding punitive damages); *Hanna v. Industrial Labor Serv., Inc.,* 636 So.2d 773, 776 (Fla.Dist. Ct.1994) (stating that sanctions provisions under rules governing discovery are not intended to be punitive); *Beery v. Maryland Medical Lab., Inc.,* 89 Md.App. 81, 597 A.2d 516, 526 (1991) (stating that purpose for award of attorney's fees as sanction is to compensate party for expenses incurred in opposing another party's bad faith conduct), *cert. denied,* 325 Md. 329, 600 A.2d 850 (1992); *cf. United States v. Halper,* 490 U.S. 435, 448–49, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989) (holding that, for purposes of Double Jeopardy Clause, a civil

sanction is punitive if it "may not be fairly characterized as remedial, but only as deterrence or retribution"). We note that NCNB claimed over $25,000 in expenses, yet was awarded only $10,000. We hold that the award of sanctions was essentially remedial and not punitive, and thus the trial court did not abuse its discretion in making the award without finding that Plaintiffs had authorized, participated in, or ratified the intimidation of the witnesses.

■ Plaintiffs also appeal the trial court's grant of summary judgment on their claims for breach of implied covenant of good faith and fair dealing and intentional and negligent infliction of emotional distress. The breach of implied covenant of good faith and fair dealing claim was decided by the court under Texas law. The tortious acts forming the basis of the intentional and negligent infliction of emotional distress claims took place in Texas and the claims should probably be resolved under Texas law. We note that this case has already been refiled in Texas, and we therefore vacate the partial summary judgment in favor of NCNB on these issues so that a Texas court resolve the claims under Texas law.

## V. UNFAIR PRACTICES ACT— ATTORNEY'S FEES

We now turn to NCNB's cross-appeal. NCNB contends that the trial court erred in denying its attorney's fees and costs pursuant to the New Mexico Unfair Practices Act, NMSA 1978, §§ 57–12–1 to –221 (Repl. Pamp.1987 & Cum.Supp.1994) (the Act). Section 57–12–10(C) of the Act provides that: "The court shall award attorneys' fees and costs to the party charged with an unfair or deceptive trade practice or an unconscionable trade practice if it finds that the party complaining of such trade practice brought an action which was groundless." NCNB argues that, in disposing of Plaintiffs' claims on grounds of lack of standing and forum non conveniens, the trial court acknowledged the groundless nature of the claims and thus was required to award NCNB its costs and attorney's fees. We disagree. The trial court's rulings in favor of NCNB did not establish that the Plaintiffs' claims were groundless.

■ Our Court of Appeals interpreted the meaning of the term "groundless" as contemplated by the Act in *G.E.W. Mechanical Contractors, Inc. v. Johnston Co.,* 115 N.M. 727, 731–33, 858 P.2d 103, 107–09 (Ct. App.1993). The Court of Appeals stated: "In interpreting Section 57–12–10(C), ... we do not read the statute to authorize an award of attorney's fees to Defendants merely because they successfully prevailed against the claims asserted by Plaintiff." *Id.* at 733, 858 P.2d at 109. Thus, the simple fact that the defendant prevailed on the Unfair Practices Act claim does not establish that the claim is groundless. The defendant must also show that "there is no arguable basis in law or fact to support the cause of action and the claim is not supported by a good-faith argument for the extension, modification, or reversal of existing law." *Id.; see also Donwerth v. Preston II Chrysler–Dodge, Inc.,* 775 S.W.2d 634, 637 (Tex.1989) (defining "groundless" as used in Texas Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Com. Code Ann. §§ 17.41–17.63 (West 1987)).

■ The court in the present case granted summary judgment against Marchman, MEI, and the Estate on the grounds that they lacked standing to assert the claims of ANC, the real party in interest. This is comparable to the situation in *G.E.W. Mechanical.* There, the trial court granted summary judgment against a corporate plaintiff on the grounds that the corporation was not the real party in interest since it was not a party to the contract that was the basis of the lawsuit. *G.E.W. Mechanical,* 115 N.M. at 729, 858 P.2d at 105. The court found that the plaintiff's action was groundless within the meaning of the Act and awarded the defendants their attorney's fees and costs incurred in defending the action. *Id.* at 732, 858 P.2d at 108. The Court of Appeals, in reversing the trial court's award of expenses, held that the fact that the action had been filed by a plaintiff who was not the real party in interest was not sufficient, by itself, to support an award of costs and fees to the defendants under the Act. *Id.* at 733, 858 P.2d at 109. The Court looked to whether the defendant had established that, at the

time the action was filed, "the action was initiated in bad faith or that there was no credible evidence to support [plaintiff's] claim." *Id.*

There is no evidence here that Plaintiffs initiated the Unfair Practices Act claim in bad faith. Furthermore, Marchman, MEI, and the Estate had a colorable argument that they had standing in their individual capacities to assert claims against NCNB. The trial court initially determined that they did have standing, but later reversed itself on the issue. The fact that the court found this to be a close question clearly demonstrates an arguable basis in law and fact to support the claim that Marchman, MEI, and the Estate were real parties in interest.

In *G.E.W. Mechanical* the Court of Appeals indicated that the ultimate question in a case such as this, where the plaintiff bringing claim under the Act is not the real party in interest, is whether "had the action been commenced by the real party in interest such action would have been groundless or initiated in bad faith." *Id.* The real party in interest, ANC, had its case dismissed on grounds on forum non conveniens. NCNB argues that this "constituted a ruling that no state of facts provable under the claim could have entitled ANC to recover in a New Mexico Court." A forum non conveniens dismissal does not reflect on the merits of the parties' claims; it is merely a decision that the action should be heard in another forum for reasons of justice and convenience. Thus the dismissal cannot possibly be construed as a ruling that ANC's claim is groundless. ANC's evidence presented in opposition to NCNB's motions for summary judgment contains allegations that NCNB made false and misleading statements to officers of ANC in relation to the extension of credit to and collection of debts from ANC. *See* §§ 57–12–2(D) & 57–12–10(B). This evidence is sufficient to demonstrate an arguable basis in fact or law for ANC's claim. NCNB having failed to show that ANC's Unfair Practices Act claim is groundless, we affirm the trial court's denial of attorney's fees and costs for expenses incurred by NCNB in defending against the claim.

## VI. RULE 54(E)

Lastly, NCNB maintains that the trial court erred in denying an award of costs pursuant to SCRA 1986, 1–054(E) (Repl. Pamp.1992) (Rule 54(E)). Rule 54(E) provides that "costs shall be allowed as a matter of course to the prevailing party unless the court otherwise directs." We review a trial court's decision regarding assessment of costs in a civil action for abuse of discretion. *Mascarenas v. Jaramillo,* 111 N.M. 410, 415, 806 P.2d 59, 64 (1991); *see also* 6 James W. Moore et al., *Moore's Federal Practice* ¶ 54.70[5], at 54–331 (2d ed. 1993) (interpreting Fed.R.Civ.P. 54(d), with language identical to Rule 54(E), to "vest[ ] in the district court a sound discretion over the allowance, disallowance, or apportionment of costs in all civil actions"). Courts, in their exercise of discretion, should "approach the issue of awarding costs on a case-by-case basis, based on the equities of the situation." *Gallegos ex rel. Gallegos v. Southwest Community Health Servs.,* 117 N.M. 481, 490, 872 P.2d 899, 908 (Ct.App.), *cert. denied,* 118 N.M. 311, 881 P.2d 56 (1994).

Rule 54(E) creates a presumption that the prevailing party will be awarded costs. *See Mascarenas,* 111 N.M. at 415, 806 P.2d at 64 (stating that costs should be awarded to prevailing party as a matter of course); *Popeil Bros., Inc. v. Schick Elec., Inc.,* 516 F.2d 772, 775 (7th Cir.1975) ("[T]he prevailing party is prima facie entitled to costs and it is incumbent on the losing party to overcome the presumption."). The losing party may overcome the presumption by showing "bad faith on the part of the prevailing party, or misconduct during the course of the litigation, or that an award would be unjust, or that other circumstances justify the denial of costs." *Gallegos,* 117 N.M. at 490, 872 P.2d at 908 (quoting Laura B. Bartell, "Taxation of Costs and Awards of Expenses in Federal Court," 101 F.R.D. 553, 560 (1984) (citations omitted)); *see also Friedman v. Ganassi,* 853 F.2d 207, 211 (3d Cir.1988) (stating that a court need not award costs if it finds such an award to be inequitable); *cert. denied,* 488 U.S. 1042, 109 S.Ct. 867, 102 L.Ed.2d 991 (1989). If the trial court exercises its discretion not to

award costs to the prevailing party it should articulate the reasons for its ruling, unless "the basis for denying costs is readily apparent on the face of the record." *In re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 994 F.2d 956, 963 (1st Cir.1993); *see also Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 539 (5th Cir.1990) (affirming award of costs to losing party even though district court did not state reasons; record contained clear grounds for taxing costs against the prevailing parties). *But see Baez v. United States Dep't of Justice*, 684 F.2d 999, 1004 & n. 28 (D.C.Cir. 1982) (en banc) (collecting cases from ten federal circuits recognizing that district courts may not disallow prevailing party's bill of costs in part or in whole without providing justification for its actions). Here, the trial court failed to state its reasons for not awarding costs to NCNB. We must examine the record to determine if the reasons for denying costs are readily apparent.

■■■■ The threshold question in determining if a party is entitled to an award of costs under Rule 54(E) is whether the party requesting costs is the prevailing party. "[T]he prevailing party is the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment." *Dunleavy v. Miller*, 116 N.M. 353, 360, 862 P.2d 1212, 1219 (1993). NCNB has not avoided an adverse judgment in favor of ANC. In granting the motion to dismiss for forum non conveniens the court did not reach the merits of ANC's underlying action; those claims will be decided in the Texas litigation. The trial court could not determine who was the prevailing party between NCNB and ANC until the merits of ANC's claims had been adjudicated, because NCNB might still lose the principle case and thus not "prevail." *See Read v. Western Farm Bureau Mut. Ins. Co.*, 90 N.M. 369, 376, 563 P.2d 1162, 1169 (Ct.App.1977) ("The taxation of costs must await the final determination of the case."); *cf. Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 782 F.Supp. 1314, 1318 (E.D.Wis.1991) (case dismissed for improper venue; court held that: "Presumably, the action will recommence in the appropriate judicial district; only after the action has there been adjudicated on its merits will a 'prevailing party' emerge for purposes of [the Copyright Act of 1976] 17 U.S.C. § 505"), *vacated in part on other grounds*, 8 F.3d 441 (7th Cir.1993). The merits of ANC's claims against NCNB have not been adjudicated, and therefore it is readily apparent from our review of the record that NCNB is not a prevailing party as to ANC. *Cf. Blanco v. Banco Indus. de Venez., S.A.*, 997 F.2d 974, 984 (2d Cir.1993) (ordering parties to bear own costs on forum non conveniens dismissal).

■■■■ NCNB is the prevailing party, however, against plaintiffs Marchman, MEI, and the Estate. "A judgment for defendant on its motion for summary judgment ... is one on which it is the prevailing party and entitled to costs unless the trial court can articulate a justification for denial." *IAP, Inc. v. Mercedes–Benz of N. Am., Inc.*, 571 F.Supp. 262, 269 (D.N.J.1983). Even though NCNB is a prevailing party as to these plaintiffs, the court's basis for denying costs is clear.

The claims of Marchman, MEI, and the Estate are derivative of the claims of ANC. The claims of the dismissed plaintiffs thus are inextricably intertwined with those of the remaining plaintiff. It would be virtually impossible to determine what portions of what depositions were developed in defense of the dismissed plaintiffs' claims, but that will not be useful in defending against ANC's claims. When this case is finally adjudicated in Texas, the trial court there can determine the prevailing party and award costs for that action, *see* Tex.R.Civ.P.Ann. r. 131 (West 1979) (providing that "successful party" shall be awarded costs), and it should consider for the purpose of awarding costs that the Texas action is a continuation of the New Mexico action. Accordingly, we affirm that part of the judgment ordering the parties to bear their own costs.

## VII. CONCLUSION

We affirm the partial summary judgment against Marchman, MEI, and the Estate on the grounds that they lack standing to bring claims against NCNB that are derivative of the claims asserted by ANC. We likewise affirm the forum non conveniens dismissal of

this case as in the best interests of the citizens and judiciary of New Mexico, with the condition that the case may be reinstated in the First Judicial District if NCNB refuses to waive all statute of limitations defenses arising after March 11, 1991. We vacate the partial summary judgment in favor of NCNB on its claims of breach of the covenant of good faith and fair dealing and intentional and negligent infliction of emotional distress to allow a Texas court to adjudicate the claims. The award to NCNB of partial expenses incurred in bringing its motion to dismiss or for sanctions is also affirmed as a proper exercise of the trial court's discretion. Finally, we affirm the court's rulings denying NCNB both attorney's fees and costs. Each party shall bear its own costs on appeal.

IT IS SO ORDERED.

BACA, C.J., and FROST, J., concur.