Catherine ULISSEY, Plaintiff–Appellee/Cross Appellant,

v.

Alexander SHVARTSMAN, Defendant–Appellant/Cross Appellee.

Nos. 94–1283, 94–1382 and 94–1418.

United States Court of Appeals,
Tenth Circuit.

Aug. 1, 1995.

---

James H. Chalat, Chalat & Co., P.C., Denver, CO, for plaintiff-appellee/cross appellant.

William H. ReMine, III, Montgomery Little & McGrew, P.C., Englewood, CO, for defendant-appellant/cross appellee.

Before MOORE, Circuit Judge, LOGAN, Senior Circuit Judge, and DAUGHERTY, Senior District Judge.*

JOHN P. MOORE, Circuit Judge.

This appeal questions whether the district court properly granted summary judgment. Concluding there are material facts in controversy, we reverse.

## I.

Invoking diversity jurisdiction, plaintiff Catherine Ulissey sued Alexander Shvartsman, alleging he negligently collided with her while they were skiing on Snowmass Mountain at Aspen, Colorado. Ms. Ulissey claimed, as the uphill skier, Mr. Shvartsman failed to maintain a proper lookout, breaching statutory duties imposed by the Colorado Ski Safety Act, Colo.Rev.Stat. §§ 33–44–101 to 33–44–111 (1979) (the Ski Act). She alleged Mr. Shvartsman's negligence resulted in a severe injury to her right knee, a torn anterior cruciate ligament, for which she incurred surgical, medical, and rehabilitative expenses. A professional dancer, Ms. Ulissey also claimed the injury caused substantial economic damage to her career. Upon

* The Honorable Frederick A. Daugherty, Senior Judge for the United States District Court for the Western District of Oklahoma, sitting by designation.

these allegations, Ms. Ulissey moved for summary judgment on Mr. Shvartsman's liability for negligence, contending the undisputed material facts established the following as a matter of law.

On January 19, 1993, Ms. Ulissey was skiing on "Funnel," a beginner run, making slow, snow-plow turns on one side of the slope, traversing the open space, and then snow-plow turning on the other side. Mr. Shvartsman entered Funnel from "Slider," which along with "No Name," both intermediate slopes, spilled into Funnel below the base terminal of Lift # 15. Above her and skiing fast, straight down the fall line, Mr. Shvartsman collided with Ms. Ulissey, causing her to fall backwards and horizontally as he, landing on his back, slid about fifteen feet downhill.

In her deposition, Ms. Ulissey stated she first saw Mr. Shvartsman at some point above her moving straight down the hill. Only when she felt some contact with her upper body pulling her backwards and twisting her knee did she realize a collision occurred, although she did not then identify Mr. Shvartsman as the other skier. She screamed, and a ski instructor just above the collision site offered his help. On an accident report taken by a Snowmass accident investigator, Ms. Ulissey wrote, "I was skiing down and someone ran over the back of my skis."

Ms. Ulissey supplemented her motion with depositions of Mr. Shvartsman, his wife, Raya, and their skiing companion, Ms. Bella Belinkov, the ski instructor, and ski patrollers who responded to the accident, reconstructions of the accident site, maps, and photographs. The undisputed fact Mr. Shvartsman approached from uphill, she averred, placed the duty upon him to keep a proper lookout. His unswerving admission in his deposition he did not see Ms. Ulissey before the accident inescapably established he breached his primary duty to maintain a proper lookout, she contended. Under the

Ski Act, § 33–44–109(2),[1] Ms. Ulissey urged that breach amounted to negligence per se.

Resisting summary judgment, Mr. Shvartsman responded Ms. Ulissey's diagonal traverse of the slope and backward fall substantiate his version of the facts. He stated, as he skied down the left side of Funnel, Ms. Ulissey skied in a diagonal direction from the middle of the slope to the left-hand side. Their paths crossed when Ms. Ulissey skied over the back of his skis without any body contact. This version, Mr. Shvartsman insisted, was supported by the physical evidence of the direction of the two skiers' falls. Under this premise, if the downhill skier actually struck plaintiff in the back and from the rear, both she and defendant would have fallen forward from the same place. Moreover, this version supports his truthful deposition statement, Mr. Shvartsman maintains, that he did not see Ms. Ulissey before he fell. On the accident form he signed shortly afterwards, he had reported, "Skied down from bottom of L# 15 on Funnel. She made a sudden turn & stopped. He said he was skiing in control, and said she also seemed to have crossed his ski."

Mr. Shvartsman distinguished the deposition testimony of Richard Ganson, the nearby ski instructor, who observed both skiers before the accident but did not actually see the accident. He resisted plaintiff's motion insisting because each party presented differing theories of the collision based on their respective version of the facts, only a jury could resolve the underlying factual dispute.

The district court disagreed, rejecting Mr. Shvartsman's theory about the direction the parties fell. Instead, it theorized:

> The fact that the vector force propelled plaintiff across the hill, whereas defendant was propelled downhill, merely suggests that plaintiff was traversing the hill while defendant was skiing straight down. It is axiomatic that a person skiing straight downhill travels faster

1. The Colorado Ski Safety and Liability Act, § 33–44–109(2) states:

> Each skier has the duty to maintain control of his speed and course at all times when skiing and to maintain a proper lookout so as to be able to avoid other skiers and objects. However, the primary duty shall be on the person skiing downhill to avoid collision with any person or objects below him.

down the slope than a person going across the same slope. Given the relative directions of the two skiers, it would have been impossible for plaintiff to have overtaken defendant while travelling horizontally across the slope. This suggests that, regardless of who crossed over the back of whose skis, defendant was the uphill skier.

In the district court's view, the "undisputed evidence" planted Mr. Shvartsman as the uphill skier with the primary responsibility for avoiding the collision. Consequently, it concluded his breach of the statutory duties of maintaining a proper lookout and yielding to the downhill skier "was the proximate cause of the accident and plaintiff's injuries."

One-hundred percent liability thus determined as a matter of law, the court empaneled a jury to hear evidence on Ms. Ulissey's damages. The jury awarded Ms. Ulissey $500,000 for noneconomic losses and $1,650,000 for economic losses, which together with prejudgment interest totaled $2,424,541.20 in damages. Rejecting Mr. Shvartsman's post-trial motions for new trial or remittitur, the court held the award of damages was fully supported by the evidence and refused to stay the judgment pending this appeal, absent an approved supersedeas bond. The court also rejected Ms. Ulissey's motion to review the clerk's taxation of costs based on her argument federal law on costs, 18 U.S.C. §§ 1821 and 1920, is superceded in a diversity case when there is a specific state law on costs. While these cross appeals before us challenge each of these rulings, our disposition precludes resolution of those issues.

## II.

On review, we cut our own trail equipped with the same gear supplied by Fed.R.Civ.P. 56 as the district court packed, *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 796 (10th Cir.1993), indulging all of the evidence in the light most favorable to the non-moving party. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). Because we

may draw all reasonable inferences from the available underlying facts, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), summary judgment will only end the day if there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

To traverse Rule 56, one must successfully pass through gates labeled "material" and genuine." One opposing summary judgment is usually given wide berth to prove a factual controversy exists. In a well-edged metaphor, the First Circuit observed, "this requirement has sharp teeth." *Wynne v. Tufts University Sch. of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). First, a material fact is evidence advanced by the nonmoving party necessary "to those dispositive matters for which it carries the burden of proof." *Applied Genetics*, 912 F.2d at 1241 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Thus, a material fact is one which might affect the outcome of the dispute under the applicable law. Second, to establish a genuine fact, the nonmovant "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)).

Before deciding a matter by summary judgment, a court is called upon to pierce the facts and law to determine whether "trial is actually required." *Wynne*, 976 F.2d at 794. Nevertheless, certain legal terrain challenges disposition by summary judgment.

Indeed, the substantive slope of negligence is a treacherous trail upon which to avoid a trial.[2] Its moguls of credibility determina-

---

2. For example, "Although a motion for summary judgment under Rule 56 may be made in any civil action, it is not commonly interposed, and even less frequently granted, in negligence actions." 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2729 (1983).

tions and subjective reaction provide the perfect course for a jury. Yet, summary judgment is not always unattainable in negligence actions, especially when it is based on the resolution of legal rather than factual issues or when there is insufficient evidence to create a genuine factual issue. These examples remain the rare case. It is otherwise sparingly granted in a negligence cause of action.

■ Moveover, under Colorado law, where there is a rebuttable presumption that a skier who collides with another skier is negligent, *see Pizza v. Wolf Creek Ski Dev. Corp.,* 711 P.2d 671, 679 (Colo.1985); § 33–44–109(2), resolution by summary judgment of all the issues presented by a negligence action appears especially tortuous. Indeed, even when liability is found, under Colorado law, a jury is required to determine the degree of comparative negligence of each party. Colo.Rev.Stat. § 13–21–111(2)(b).

### III.

Our de novo review does not give deference to the district court's interpretation of the state statute at issue. *Salve Regina College v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991); *United States v. Johnson,* 941 F.2d 1102, 1111 (10th Cir.1991). Hence, we begin with § 33–44–109(2) under which Ms. Ulissey alleged Mr. Shvartsman was 100% liable.

This subsection provides:

Each skier has the duty to maintain control of his speed and course at all times when skiing and to maintain a proper lookout so as to be able to avoid other skiers and objects. However, the primary duty shall be on the person skiing downhill to avoid collision with any person or objects below him.

■ Given the commonly accepted and understood meaning of the words in this subsection, *Climax Molybdenum Co. v. Walter,* 812 P.2d 1168, 1173 (Colo.1991), "each skier" has the duty to keep a "proper lookout," which is defined in context alone as looking "to avoid other skiers or objects." Each skier also has a duty to ski in control— maintaining a safe speed and course trajectory to facilitate a proper lookout. While the uphill skier has the better opportunity to observe people and objects below, that skier's duty to keep a proper lookout is considered primary but nothing in the statute makes that skier's duty exclusive. Thus, when a collision occurs, the statute creates the presumption that the uphill skier, if there is an uphill skier, had the better opportunity to avoid the collision. However, the Colorado Supreme Court has stated, the statutory presumption remains rebuttable. *Pizza v. Wolf Creek,* 711 P.2d at 679.

Given the statutory duties imposed on the uphill skier and all skiers, the task is to determine who was uphill and whether that skier breached the duty to avoid colliding with skiers "below." Once liability is determined, under the plain language of the statute, the inquiry moves to questions of degree of fault.

■ On the record before us, however, we cannot discern who was the uphill skier. Although Mr. Shvartsman came from Slider, the run above Funnel, that fact alone does not fix him in the position of the uphill skier. At the instant of collision, there remain material facts in dispute about who was where. Ms. Ulissey did not see Mr. Shvartsman when he collided with her. Mr. Shvartsman also stated he did not see Ms. Ulissey. However, if he is the uphill skier, as the district court found, he had to see her before the collision. Under Rule 56(c), we are not free to disbelieve him. In fact, Ms. Ulissey described the accident one way; and Mr. Shvartsman recounted his competing and different version. None of the individuals on the slope that day who saw either party before or after the accident, actually saw the collision itself. The record, thus, discloses a dispute over a material fact which affects the outcome of the action and, under Colorado

---

"Issues of negligence, including such related issues as wanton or contributory negligence, are ordinarily not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial in the ordinary manner." 6

Jeremy C. Moore et al., *Moore's Federal Practice* ¶ 56.17[42] (2d ed. 1995). Both treatises, of course, recognize certain cases that may be more appropriate, such as the personal injury action for damages after an airplane crash.

law, is the first step toward determining liability.

As we view the deposition testimony and documentary evidence, numerous questions related to this central one remain unresolved: how fast was Mr. Shvartsman skiing on this "relatively flat" slope; how flat was the slope; how visible were the skiers; from which direction did the skiers travel; were they skiing in control; what is the visibility from the Halfpipe side of the slope; was this exclusively a beginners' slope. None has a formulaic answer, but each reminds that material issues of fact remain unresolved. So, while the application of principles of physics may be helpful to order the facts once they are established, the axiom relied upon by the district court has no fundament. Indeed, it is even conceivable that a skier traversing the fall line could do so faster than one traveling in the direction of the fall line. In this instance, the district court assumed a fact which the deposition testimony puts in controversy.[3] Similarly, defendant's theory that the direction of the fall is probative of who skied over whose skis remains unresolved until it is supported by testimony tempered by cross-examination.[4]

Because material facts remain in dispute which the district court improperly resolved, we, therefore, reverse its order granting summary judgment and remand. This disposition necessarily abates our consideration of Mr. Shvartsman's second issue on appeal related to the award of damages. Ms. Ulissey's cross appeal must also await a jury's determination of liability.

**REVERSED AND REMANDED.**

---

3. During oral argument, plaintiff's counsel attempted to explain what the district court meant in stating "it is axiomatic that a person skiing straight downhill travels faster down the slope than a person going across the same slope." Counsel stated the axiom was based on the rate of descent, not the speed of travel. That surmise reveals the underlying evidentiary conflict that granting the motion for summary judgment simply whited out.

4. Of course, once a jury resolves these fundamental questions of liability, under Colorado law, it proceeds to compare the negligence of the respective parties. That is, when the jury decides, based on the evidence presented, who skied over the backs of whose skis, if that question is dispositive, then it will distribute liability for negligence accordingly. The district court's ruling, of course, eliminated any consideration of this factor.