**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 17 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

VANCE H. SMITH and DEBORAH P. SMITH,

   Plaintiffs-Appellants,

v.

EASTERN NEW MEXICO MEDICAL CENTER; ORSON TRELOAR; JOHN KIKER; MIKE MCGUIRE; RICHARD MOONEY; THOR STANGEBYE; KEVIN LOWE; MATT FOSTER; and DONALD WENNER,

   Defendants-Appellees.

No. 97-2164
(D.C. No. CIV-92-641-LH)
(District of New Mexico)

**ORDER AND JUDGMENT** [*]

Before **BRORBY** , **McWILLIAMS** , and **HENRY** , Circuit Judges.

Vance and Deborah Smith appeal the district court's grant of the

defendants' summary judgment motion on their Fourteenth Amendment equal

protection claims. The district court found that the Smiths' claims were barred by

the law of the case doctrine and, further, that Mrs. Smith's claim was barred

---

[*]      This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

because she could not assert what was, in the district court's view, a cause of action belonging to her corporation. We vacate and remand because there is no law of the case barring the Smiths' equal protection claims and because Mrs. Smith has alleged injuries separate and distinct from those of other corporate shareholders.

## I.   BACKGROUND

Dr. Vance Smith, a board-certified surgeon in general and vascular surgery, had medical privileges at the Eastern New Mexico Medical Center ("ENMMC"), a general hospital in Roswell, from 1985 to 1991. Dr. Smith had numerous conflicts with the defendant doctors and others working at the hospital. He claims these conflicts led to many adverse actions that cost him money when, among other things, the defendants forced him to stop performing (1) general surgery and various specific surgical procedures, (2) certain surgeries that should have been attended by an anesthesiology group that wouldn't work with him, and (3) all surgeries when his medical staff privileges were summarily suspended. He also alleges that the defendants caused him damages when they forced him to leave Roswell by unlawfully threatening a second summary suspension of his medical privileges, a disciplinary action that, he claims, would have ruined his career. Dr. Smith asserts that all of these actions and others–including placing

him on chart review, maintaining a secret file on him, and accusing him of being disruptive–were only done to him and were done specifically to force him out of practice in Roswell.

The defendants respond that Dr. Smith created many of the problems he complains of and that they provided him with procedural due process protections every time they took or threatened adverse actions against him. Further, they assert that the record simply does not support the vast majority, if any, of his claims.

During roughly the same time period, Dr. Smith's wife, Deborah P. Smith, a registered nurse and registered vascular technician, operated the Eastern New Mexico Medical Center Noninvasive Peripheral Vascular Laboratory, Ltd., ("Vascular Lab") on property leased from the ENMMC. She and a trust created for the benefit of Dr. Smith's children were the only shareholders in the Vascular Lab. Although the Vascular Lab was a corporate entity, Mrs. Smith avers that she personally signed a promissory note obligating her to repay the debt for some of the equipment in the Vascular Lab and that, using her own funds, she bought other equipment for the corporation. She asserts that she had to leave Roswell with her husband, close the Vascular Lab, and pay the note. Thus, she also contends she was injured by the defendants' alleged efforts to force her husband

-3-

out of the ENMMC, and her injuries are in the form of lost profits from the Vascular Lab and losses on the equipment in the Lab.

This appeal is the second we have heard concerning this litigation. Initially, the Smiths sued the ENMMC and doctors working at the ENMMC asserting fourteen federal civil rights, antitrust, and state law tort claims. The district court granted the defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss the Smiths' Fourteenth Amendment equal protection claim. The district court then granted the defendants' summary judgment motion on the Smiths' remaining claims.

The Smiths appealed, and, in an unpublished Order and Judgment, our Court affirmed the grant of summary judgment. See Smith v. Eastern New Mexico Med. Ctr. , Nos. 94-2213 & 94-2241, 1995 WL 749712 (10th Cir. Dec. 19, 1995). However, we reversed dismissal of the equal protection claim, noting that "the Equal Protection Clause protects not only against discrimination where victims within an identified classification or group are injured, but also where the plaintiff alleges an element of intentional or purposeful discrimination so as to invoke the clause to protect an individual victim." Id. at **7 (internal quotation marks omitted). After listing some of the above acts alleged by the Smiths as proof that they pled "intentional or purposeful discrimination," we remanded stating that "the plaintiffs may or may not be able to prove [an equal protection

-4-

violation], but we . . . are persuaded that the complaint states an equal protection claim." Id. at **8.

On remand, the defendants moved for summary judgment on the equal protection claim, and the district court granted their motion. Concluding that Dr. Smith's injury claim relied on his being forced or coerced into an involuntary resignation from the ENMMC, see Dist. Ct.'s Mem. Op. filed Apr. 17, 1997, at 10, and that in its earlier grant of summary judgment, it had decided, and the Tenth Circuit had affirmed, "that Dr. Smith was not forced or coerced into departing," id. at 10-11, the district court granted summary judgment to the defendants on Dr. Smith's claim using law of the case doctrine.

As to Mrs. Smith's equal protection claim, the district court found two reasons to grant summary judgment against her. First, it ruled that her losses were actually those of the corporation and that a corporate officer may not prosecute a corporation's § 1983 claim. See id. at 13. Second, the district court stated that, in its earlier order, it granted summary judgment against Mrs. Smith on all her claims regarding the Vascular Lab, and she did not appeal the summary judgment ruling. See id. at 14. Thus, according to the district court, "even though the [Tenth Circuit] found that Ms. Smith stated an equal protection claim in [her] Second Amended Complaint sufficient to withstand a motion to dismiss, this claim is barred by the law of the case." Id. The Smiths again appeal.

## II. STANDARD OF REVIEW

We review a summary judgment ruling de novo, applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c). See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. (quoting Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995)). A "material fact is one which might affect the outcome of the dispute under the applicable law." Ulissey v. Shvartsman, 61 F.3d 805, 808 (10th Cir. 1995). "An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant." Kaul, 83 F.3d at 1212 (quoting Wolf, 50 F.3d at 796). We examine the factual record and reasonable inferences from it in the light most favorable to the non-movant. See id. "If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court." Id. (quoting Wolf, 50 F.3d at 796).

## III.    DR. SMITH'S EQUAL PROTECTION CLAIM

Dr. Smith argues, first, that our earlier ruling did not specifically decide that he could not produce facts to prove his equal protection claim but rather only that he had not complied with the district court's local procedural rule in resisting summary judgment on his other claims.  Second, he asserts that even if our earlier ruling did hold that he cannot produce facts showing he was forced to leave Roswell, he still can show the defendants injured him before he left the ENMMC, by, for example, suspending his surgical privileges and, thereby, causing him to lose revenue.

"Law of the case principles do 'not bar a district court from acting unless an appellate decision has issued on the merits of the claim sought to be precluded.'"   Wilmer v. Board of County Commissioners    , 69 F.3d 406, 409 (10th Cir. 1995) (quoting    United States v. Caterino    , 29 F.3d 1390, 1395 (9th Cir. 1994)).   "Thus, when a dispositive procedural deficiency has obviated or deflected consideration of the underlying merits of a claim, the law of the case doctrine does not reach through that procedural ruling to enshrine a substantive determination never in fact made."     Id.

In Wilmer , the district court denied a procedurally defective motion without reaching the merits of the jurisdictional issue it raised.        See Wilmer , 69 F.3d at 409.  Our Court affirmed because of the procedural defect, also without reaching

the merits of the jurisdiction question.    See id.  On remand, the moving party again raised the jurisdictional issue, but the district court refused to consider the claim on law of the case grounds.    See id.  On appeal, we reversed stating that "given the majority's unqualified reliance on the procedural disposition of the district court and its silence with respect to the . . . jurisdictional [issues] . . . , we cannot say this court's prior decision actually resolved on the merits the jurisdictional question . . . ."    Id. at 410.

We agree with the district court that there is large overlap in the factual basis for Mr. Smith's equal protection claim and his claims on which we affirmed summary judgment.  We also agree that our affirmance in the earlier appeal was based on our conclusion that Mr. Smith could not rely upon those facts to resist summary judgment.  However, as our earlier ruling was based on the Smiths' failure to follow local summary judgment rules, a procedural deficiency, we disagree that the earlier appeal automatically forecloses Mr. Smith's efforts to produce those facts to resist summary judgment on his equal protection claim.

In the Smiths' first appeal, we relied on a procedural defect to affirm the grant of summary judgment on their other-than-equal-protection claims.  We stated that the district court granted summary judgment for the defendants because the Smiths did not comply with the district court's local summary judgment motion rules.    See Smith, 1995 WL 749712, at **2.  We then affirmed

because "we c[ould not] say that the court abused its discretion by relying [on its local rules] and concluding that plaintiffs failed to identify any disputed material facts precluding summary judgment." Id. at **4. Therefore, our earlier holding was based on a dispositive procedural deficiency and does not prevent Mr. Smith from producing facts in support of his equal protection claims.

Nor would it have been logical for us to remand if our earlier opinion had foreclosed the possibility of Mr. Smith producing facts in support of his equal protection claim. It simply would make no sense for us to have ruled (1) that the district court improperly granted a 12(b)(6) motion dismissing the equal protection claim, then (2) that Dr. Smith could not produce facts to support the equal protection claim, then (3) that the equal protection claim should be remanded even though we had already ruled Dr. Smith could not identify facts supporting that claim.

Additionally, although the district court's opinion was premised on the conclusion that we decided that Dr. Smith cannot prove he was forced to leave Roswell, see Dist. Ct.'s Mem. Op. at 10-11, Dr. Smith claims that the defendants caused him monetary damages on many occasions before he was allegedly forced to leave the ENMMC. Therefore, even if we were to agree that our earlier decision foreclosed Dr. Smith's claim that he was forced to leave the ENMMC,

we would have to remand for consideration of the other facts underlying his equal protection claim.

As our affirmance of the district court's grant of summary judgment was based on the Smiths' failure to follow the local rules and because procedural decisions cannot be the basis of a law of the case ruling, we vacate and remand for consideration of Dr. Smith's equal protection claim.

## IV.   MRS. SMITH'S EQUAL PROTECTION CLAIM

The district court's grant of summary judgment to the defendants on Mrs. Smith's equal protection claim was based on two grounds:  (1) that Mrs. Smith's claim is barred by law of the case because she did not appeal the district court's initial grant of summary judgment against her and (2) that Mrs. Smith cannot sue for losses to the Vascular Lab because those losses were to the corporate entity. However, we vacate the district court's order because the district court had already dismissed Mrs. Smith's equal protection claim when it entered its summary judgment order, and Mrs. Smith did appeal the district court's dismissal of her equal protection claim.  Additionally, Mrs. Smith has alleged an injury separate and distinct from the other Vascular Lab shareholder.

A.      Mrs. Smith's prior appeal

The district court stated that it granted the defendants' first motion for summary judgment on all "'claims related to the [Vascular Lab],' including the equal protection claim."   See Dist. Ct.'s Mem. Op. at 14.  According to the district court, Mrs. Smith did not appeal that ruling.   See id.  Therefore, the district court concluded, "even though [the earlier panel of] the appellate court found that Mrs. Smith stated an equal protection claim . . . sufficient to withstand a motion to dismiss, this claim is barred by law of the case."   Id.

We do not think Mrs. Smith's equal protection claim is barred by law of the case.  First, the record informs us that the district court had already dismissed Mrs. Smith's equal protection claim before it ruled on the defendants' motion for summary judgment.   See Dist. Ct. Order filed Aug. 9, 1994.  Therefore, her equal protection claim was no longer before the district court at the time it entered its summary judgment order, and we simply fail to see how it could have entered summary judgment on that claim.  Second, although Mrs. Smith may not have appealed the summary judgment order regarding the Vascular Lab, our record shows that Mrs. Smith did appeal the district court's dismissal of her equal protection claim.   See Aplts' Opening Br. in No. 94-2241, at 23-25; Aplts' Reply Br. in Nos. 94-2213 & 94-2241, at 12-16.  Thus, we properly had Mrs. Smith's equal protection claim before us when we reinstated it in our earlier opinion.  We

-11-

once again reinstate her equal protection claim because it was not before the district court at the time it entered its summary judgment order and because Mrs. Smith appealed the dismissal of the claim.

B.     Separate and distinct injury

"[A] stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares." Marchman v. NCNB Tex. Nat'l Bank, 898 P.2d 709, 716 (N.M. 1995); see Stat-Tech Int'l Corp. v. Delutes (In re Stat-Tech Int'l Corp.), 47 F.3d 1054, 1059 (10th Cir. 1995). "The theory behind this rule is that, once the corporation recovers its losses and replenishes its assets, the recovery will be reflected in the price of the stock and will allow the corporation to distribute the proceeds of the recovery, and thus the shareholders and creditors will also recover for the indirect harm they have suffered." Marchman, 898 P.2d at 716. However, when the theory of indirect loss, which is behind the rule, would not be vindicated, exceptions to the rule apply. See id. at 716-17. For instance, when "the shareholder suffer[s] an injury separate and distinct from that suffered by other shareholders. . . . the shareholder is entitled to sue." Id. at 717.

-12-

Mrs. Smith, who owned 40% of the corporate stock, avers that she paid for and signed a promissory note in her individual capacity for some of the corporation's equipment. Thus, she claims, when the corporation folded, she suffered individual loss. According to Mrs. Smith, that individual loss was separate and distinct from the loss suffered by the trust for Dr. Smith's children, which owned 60% of the corporate stock, but which had not purchased any of the equipment. If she can prove her individual losses, she would have standing to sue in her individual capacity for a portion of the corporation's losses. As this is a material factual issue, we remand to the district court to give Mrs. Smith an opportunity to show her individual losses.

## IV.    CONCLUSION

There was no law of the case requiring summary judgment be entered in favor of defendants on Dr. Smith's equal protection claim. Additionally, Mrs. Smith asserted a separate and distinct injury from that suffered by the other shareholder in the Vascular Lab, and Mrs. Smith appealed the district court's earlier dismissal of her equal protection claim, which was not before the district court when it entered summary judgment on her other claims relating to the Vascular Lab. Therefore, we vacate and remand for consideration of the merits of the Smiths' equal protection claims. When considering the merits, the district

-13-

court may grant summary judgment in favor of the defendants if, as they claim, the evidence submitted by the Smiths to resist summary judgment would be inadmissible at trial, or if summary judgment would be appropriate for any other reason.

Entered for the Court,


Robert H. Henry
Circuit Judge