Charles T. GREEN, Phillip R. Wentland and Marilyn Breithaupt, Plaintiff,

v.

**SEARS, ROEBUCK & COMPANY, a New York corporation, Defendants.**

**Curtis McReynolds, Plaintiff,**

v.

**Sears, Roebuck & Co., a New York corporation,**

No. 01–K–2324, 01–K–2330.

United States District Court, D. Colorado.

Dec. 23, 2003.

---

Gary M. Clexton, Miller & Steiert, P.C., Littleton, CO, William J. Martinez, McNamara & Martinez, LLP, Denver, CO, for Plaintiffs.

Daniel E. Friesen, Hale, Hackstaff, Friesen, LLP, Denver, CO, for Defendant.

William J. Martinez, McNamara & Martinez, LLP, Denver, CO, for Plaintiff Curtis E. McReynolds.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

In these related civil actions, four former Sears appliance repair technicians assert claims of age discrimination against Sears, Roebuck & Co. ("Sears") after they

were laid off in 2000 as part of a restructuring/consolidation of technician services from several Denver area Sears facilities to a centralized facility in Aurora, Colorado. At the time of their termination, Plaintiffs were employed at Sears's service facility in Thornton, Colorado (the "Thornton Facility"). The restructuring called for the closure of Thornton Facility, and Plaintiffs were laid off after they applied, but were not selected, for technician positions at Aurora.

It is undisputed that, as part of their termination, Plaintiffs were offered a severance package in exchange for a release of future age discrimination claims, which they accepted. Plaintiffs later filed suit anyway, claiming they were unlawfully targeted for termination based on their ages and length of service. Plaintiffs deny they are bound by the releases they signed because the information disclosed by Sears in eliciting those releases failed to comport with the minimum requirements of the Older Worker Benefits Protection Act of 1990 (OWBPA), 104 Stat. 983, 29 U.S.C. § 626(f)(1). Because the OWBPA prohibits the recognition of age-claim waivers as having been "knowing and voluntary" absent strict compliance with its terms, Plaintiffs contend the releases are invalid. Sears disagrees, asserting its disclosures complied with the OWBPA's requirements such that the releases are binding and Plaintiffs' claims barred.

The question of the releases' validity is before me on cross-motions for summary judgment. As the party asserting the validity of Plaintiffs' waivers, it is Sears that bears the burden of proving they were "knowing and voluntary" within the meaning of the OWBPA. 29 U.S.C. § 626(f)(3). Applying a summary judgment standard, Sears has not only failed to demonstrate a lack of any factual dispute regarding its compliance with the OWBPA's disclosure requirements, but it has failed to rebut Plaintiffs' assertion as to the inadequacy of its disclosures as to Plaintiff Wentland.

I affirmatively find Sears's disclosures inadequate as a matter of law with respect to Plaintiff Wentland, who received no information about any other employee layoff or termination besides his own, and grant Plaintiffs' Motion for Summary Judgment in that regard. I deny the cross-motions in all other respects, however, finding genuine factual disputes regarding the manner and adequacy of Sears's disclosures to them preclude entry of summary judgment for either side. It will be for the jury to decide whether Sears's disclosures provided the appropriate comparative age and job title information required under 29 U.S.C. § 626(f)(1)(H)(ii), and if so, whether Sears has otherwise carried its burden of demonstrating Plaintiffs Green, Breithaupt and McReynolds knowingly and voluntarily waived their ADEA rights.

## I. *Statutory Framework.*

 Congress amended the ADEA in 1990 by passing the Older Workers Benefits Protection Act (OWBPA), 104 Stat. 983, 29 U.S.C. § 626(f)(1). The OWBPA's purpose is the protection of older workers whose employment is subject to termination by imposing a "strict, unqualified statutory stricture" on any waivers of rights under the ADEA their employers may seek to elicit. *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 426–27, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998). Specifically, the OWBPA provides that an individual may not waive any right under the ADEA "unless the waiver is knowing and voluntary," and provides that a waiver "may not" be considered knowing or voluntary unless, "at a minimum," the employer complies with a list of enumerated requirements. 29 U.S.C. § 626(f)(1)(A)—(H). Congress's intent in enacting § 626 was to

compel employers to provide data so that an employee considering waiving ADEA rights, could assess the viability of those rights before giving them up. *Raczak v. Ameritech Corp.*, 103 F.3d 1257, 1259 (6th Cir.1997). "Congress delineated these duties with precision and without qualification: An employee 'may not waive' an ADEA claim unless the employer complies with the statute." 522 U.S. at 427, 118 S.Ct. 838. "The statutory command," the Court wrote, "is clear," and courts "are bound to take Congress at its word." *Id.*

■ Here, the specific informational prerequisites at issue are those found at subsection 626(f)(1)(H), which provides:

[I]f a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer ... informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to—

(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

The express purpose of these is to allow employees being asked to release their age discrimination claims to compare the ages of employees like themselves who are being terminated (and therefore eligible for the severance program) to the ages of employees who are not being terminated. This allows the terminated employees to make a more informed choice of whether to release such claims. S.Rep. No. 263, 101st Con., 2d Sess. 34 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1538–39. *See Raczak*, 103 F.3d at 1260–62.

In the instant case, it is impossible to conclude under a summary judgment standard whether Sears complied with the OWBPA's informational requirements at 29 U.S.C. § 626(f)(1)(H).

II. *Summary Judgment Standard.*

Summary judgment is appropriate "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In applying this standard, I examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *See Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1227 (10th Cir.1999). Where, as here, the parties file cross motions for summary judgment, "[I am] entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir.1997), *cert. denied*, 523 U.S. 1048, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998). In this regard, each party as the nonmovant is given "wide berth to prove a factual controversy exists." *Jeffries v. Kansas*, 147 F.3d 1220, 1228 (10th Cir.1998) (quoting *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995)).

III. *Merits.*

The OWBPA places the onus of proving a knowing and voluntary waiver squarely on the employer in a severance situation. 29 U.S.C. § 626(f)(3). For purposes of the instant Motions, then, it is Sears's burden to demonstrate that the comparative job

title and age information it provided each of the Plaintiffs pursuant to 29 U.S.C. § 626(f)(1)(H)(ii) met the minimum statutory and regulatory standard.

According to Sears, the relevant information was included in a booklet distributed to Plaintiffs entitled "Closed Unit/Reorganization Package Full–Time Hourly Associates." The booklet provided an overview of Sears's severance program followed by separate sections describing retirement and termination benefits that would be available to full-time hourly associates who elected to accept its terms. Page one of the booklet informed employees that they could receive a severance package only if they signed a General Release and Waiver. Explaining there were "various State and Federal laws" prohibiting employment discrimination, including the Older Workers Benefit Protection Act, employees were referred to "an *IMPORTANT NOTICE* attached to this booklet" that would set forth the information required by the OWBPA.[1] (Emphasis original.) Employees were instructed to "read the Notice Carefully before signing the General Release and Waiver."

With respect to the specific information mandated by 29 U.S.C. § 626(f)(1)(H)(ii), the Notice stated:

> Within your organization, Sears Closed Unit/Reorganization Severance Allowance Plan benefits were offered to:
> ALL FULL TIME ASSOCIATES IN DISTRICT 8181, WHO WERE NOT OFFERED A JOB, OFFERED A JOB THAT RESULTED IN AN UNREASONABLE COMMUTE OR OFFERED A JOB AT A LESSER RATE OF PAY.
>
> \* \* \* \* \* \*

"Attached to this Notice," the information continued,

> is a listing of Job Titles and birthdates of incumbents within your organization or job classification who have been offered Sears Closed Unit/Reorganization Severance Allowance Plan benefits.
>
> If applicable, also attached is a listing of Job Titles and birthdates of incumbents within your organization or job classification who were NOT offered Plan benefits.

■ The content of this Notice and the timing of its distribution raises several factual issues relevant to the legal determination of compliance with the OWBPA. The overriding issues, of course, involve the scope of the actual "program" and the propriety of the particular incumbents identified as being within or not within Plaintiffs' "organization or job classification." Other issues include the identification, as a matter of fact, of what notice was actually given and when. The record—which is an extensive collection of discovery responses, documents, declarations, deposition transcripts, and correspondence between counsel—reveals confusion on these issues emanating not only from within Sears itself, but also from Sears's counsel throughout the discovery process. The result is that a determination of whether Sears's disclosures met the requirements of 29 U.S.C. § 626(f)(1)(H) turns on factual disputes not amenable to resolution, for either side, under a Rule 56 standard.

The Closed Unit/Reorganization Program booklet, for example, was distributed twice—the first time with significantly broader comparative information disclosures than the second.[2] For nearly a year

---

1. The Notice sported a banner declaring "This Notice is being provided to satisfy the requirements of the Older Workers Benefit Protection Act."

2. The first distribution included comparative information disclosures given to Plaintiffs Breithaupt, Green and McReynolds (but not Plaintiff Wentland) with the ages and job clas-

into the litigation, Sears through its counsel represented the initial distribution was in November 1999, at the time Sears decided to eliminate all shop technician positions at the Thornton Facility. *See* 1/31/02 Letter from D. Friesen to W. Martinez and G. Clexton (attached as Ex. K–5 to Pls.' Br. in Supp. Mot. Summ. J.)(offering set of stipulations of fact including November 1999 distribution date). In May 2002, however, it was revealed by Sears's Service Unit Manager Stephanie Brooks[3] that, while the information was accurate as of November 1999, the first distribution was not actually made to employees until late January/early February 2000. Brooks Dep. at 93–94. At that point, Brooks conceded, the information was no longer accurate. *Id.* More important, however, was Brooks's assertion that the initial distribution was for "informational" purposes only, *id.* at 94, and that the "real" disclosures were the narrower ones given Plaintiffs in March. Clearly, whatever Sears's position on the accuracy of the information provided, the broader scope of the disclosures

provided Plaintiffs Breithaupt, McReynolds and Green in January or February 2000 allows an inference that the narrower information provided in March was misleading or the result of *ex post facto* adjustments that run contrary to the letter and purpose of the OWBPA.

■ Plaintiffs contend the listings they ultimately received failed to meet the OWBPA minimum statutory notice requirements because they were based on administrative job classifications that were artificially narrow when compared to the reality of the reduction-in-force, and provided insufficient information on which to base a knowing or voluntary decision of whether to waive their rights under the ADEA. Sears demurs, maintaining Plaintiffs' individual service technician departmental classifications constituted the proper "decisional unit"[4] for OWBPA notice purposes.

■ The Department of Labor in its regulations implementing the OWBPA ex-

---

sifications of all 26 full-time Thornton associates who were going to be impacted by the restructuring. Specifically, Plaintiffs Breithaupt, Green and McReynolds received listings and ages of 14 "service technicians," one "line specialist" and two "installers" who were offered program benefits (severance) and the ages of eight "service technicians" and one other "installer" who were not offered severance. (*See* Closed Unit/Reorganization Package and attachments at Ex. K–5 to Pls.' Br. Supp. Mot. Summ. J.) The attachments to the second distribution, by contrast, were tailored to the individual Plaintiffs (except Wentland, again, who received no disclosures at all) based on their administrative classification into shop service technician "departments." Based on those classifications, Plaintiffs Breithaupt and McReynolds received information on six "service technicians" from the same "department," three of whom were offered severance and three of whom were not. Plaintiff Green received information about a total of nine employees, three "installers" and two "service techni-

cians" who were offered severance and three "service technicians" and one "line specialist" who were not. The reason offered for the lack of any comparative information being given to Wentland was that he, as the sole service technician in the "Lawn & Garden" department, would have been given only his own name and age and no other.

3. Brooks was Sears's Rule 30(b)(6) designee and her deposition, and follow-up affidavit, are offered by Sears to clarify its position on the facts underlying its position regarding the adequacy of its OWBPA disclosures. My view of Brooks' testimony is that it raises as many genuine factual disputes as it resolves.

4. While the OWBPA refers variously to "groups," "classes," "units," "job classification," and "organizational units" to describe the categories of employees about which disclosures must be made, the regulations implementing the OWBPA adopted the concept of "decisional unit" to cover them all. *See* 29 C.F.R. § 1625.22(f)(1)(iii)(C), (f)(3).

plains that the term "decisional unit" is intended to reflect the reality of the process by which an employer chose certain employees for an exit incentive or termination program and ruled out others. 29 C.F.R. § 1625.22(f)(3)(i)(B). And because an employer acts on a "case-by-case" basis in identifying which employees constitute a "decisional unit", the regulations instruct that "the determination of the appropriate class, unit, or group, and job classification or organizational unit for purposes of [29 U.S.C. § 626(f)(1)(H)(i)—(ii) ] also must be made on a case-by-case basis." *Id.* § 1625.22(f)(3)(ii)(A). As applied in the instant case, the question of whether disclosures based on the particular service technician department in which each Plaintiff was administratively classified were adequate for OWBPA purposes is amenable to resolution under a summary judgment standard only in the negative and only as to Plaintiff Wentland. I find that as a matter of law, the provision of no comparative information to an individual who is one of 26 repair people being terminated from a single facility fails per se to comply with the purpose and intent of the OWBPA. As for Plaintiffs Breithaupt, McReynolds and Green, the propriety of Sears's use of their specific repair department classifications as the basis for disclosing the ages of comparable service technicians impacted by the Aurora move will be for a jury to decide based on the facts and evidence in the record.

■ In denying the Cross–Motions for Summary Judgment, there are additional factual disputes that warrant identification. Critical to the purpose of the OWBPA is the provision of accurate information to employees being asked to waive their rights under the ADEA regarding the scope of the layoffs or terminations of which they are a part. While the Closed Unit/Reorganization Package offered to Plaintiffs in this case was limited to those shop service technicians at Sears's Thornton Facility, there are facts in the record that suggest the actual restructuring/reorganization being implemented was considerably broader in scope. Shop technician positions from at least three other Denver area stores/units were eliminated or moved to Aurora, and Stephanie Brooks testified in her deposition that shop technicians from facilities other than Thornton were considered for positions at the new facility. Under the applicable OWBPA regulations, these facts may support the application of a "facility-wide" decisional unit that would have required disclosure of all 26 impacted Thornton employees, *see* 29 C.F.R. § 1625.22(f)(3)(ii)(C) and (iii)(A), or a "job category" decisional unit that would have required disclosure of all shop service technicians whose jobs were being eliminated or moved to Aurora regardless of where the employees were located, a number obviously greater than 26. *See id.* § 1625.22(f)(3)(ii)(E) and (iii)(E). In any event, the classification of Plaintiffs into groups of six to nine for disclosure purposes is not, per se, adequate for purposes of compliance under 29 U.S.C. § 626(f)(1)(H)(ii) as Sears argues in its Motion for Summary Judgment. And while my view is that Plaintiffs have the better case in this regard, I cannot say, as a matter of law, that Sears's disclosures are inadequate under a Rule 56 summary judgment standard either.

Accordingly, Plaintiffs' Motion for Summary Judgment regarding the invalidity under the OWBPA of the releases they signed is GRANTED as to PLAINTIFF WENTLAND only. Plaintiffs' Motion is DENIED in all other respects. Defendant's cross-Motion for Summary Judgment as to the Validity of Plaintiffs' Releases is DENIED in toto. The case will

be set for a pretrial conference by separate order of the court.